THE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
Tallahassee Division

PRISON LEGAL NEWS, a project of the )
HUMAN RIGHTS DEFENSE CENTER, )
a not-for-profit, Washington charitable )
corporation, )
　)
　　　　　Plaintiff, )
　)
v. )
　)　　　　　Case No: 4:12-cv-239-MW/CAS
THE GEO GROUP, INC., a Florida )
Corporation, CORRECTIONS )
CORPORATION OF AMERICA, a )
Tennessee Corporation, registered )
in and doing business in the state of Florida, )
and KENNETH S. TUCKER, in his official )
capacity as Secretary of the Florida )
Department of Corrections, )
　)
　　　　　Defendants. )
　　　　　　　　　　　　　　　　　　　)

Press Organizations' Motion for Leave to File Amicus Curiae
Memorandum in Support of the Plaintiff's Motion for Summary Judgment

The Florida Press Association, the First Amendment Foundation, the Reporters' Committee for Freedom of the Press, the Society of Professional Journalists, and the Allied Daily Newspapers of Washington move pursuant to Northern District of Florida General Rule 7.1 for leave to file an amicus curiae memorandum of law on their own behalf on behalf of other similar press organizations that may wish to join them in support of the plaintiff's motion for summary judgment that is due to be filed on March 8, 2013. The legal issues raised in this case and the prison regulations that are the subject

is case both have a serious impact on the ability of publishers represented by the amici to disseminate the daily news inside and outside of prison walls.

Memorandum of Law

This Court has broad discretion to permit the filing of an *amicus* memorandum at this stage of the litigation.[1]  District courts regularly have used that discretion to grant permission to a variety of organizations to appear as *amici* in First Amendment cases.[2] Participation by *amici* can be valuable and alert the Court to the legal contentions of concerned bystanders.  In *Resort Timeshare Resales, Inc. v. Stuart*, 764 F. Supp. 1495, 1501 (S.D. Fla. 1991), the court observed that while there is no federal rule governing amicus participation at the trial level, courts have "inherent authority" to allow amici curiae participation and hat it often can be desirable because it "'alert[s] the court to the legal contentions of concerned bystanders,'" yet "'leaves the parties free to run their own case.'"  *Id.* (citation omitted).

The Florida Press Association includes all of the daily and most of the weekly

---

[1] *See generally City of Marietta v. CSX Transportation, Inc.*, 196 F.3d 1300, 1304 (11th Cir. 1999) (upholding district court order allowing filing of amicus memorandum and relying on amicus memorandum as "within the discretion of the district court").

[2] *See, e.g., State v. United States Dep't of Health & Human Services,* 780 F. Supp. 2d 1256 (N.D. Fla. 2011) (reflecting amicus participation of the Constitutional Accountability Institute, the Competitive Enterprise Institute, the Family Research Council, the Center for American Progress, the Judicial Crisis Network, and others in suit involving federal constitutional rights); *Wollschlaeger v. Farmer*, 814 F. Supp. 2d 1367 (S.D. Fla. 2011) (reflecting amicus participation in section 1983 suit alleging First Amendment violation); *IMS Health Inc. v. Sorrell,* No. 1:07-cv-00188-jgm (D. Vt. June 20, 2008) (amici curiae memoranda (DE-281, 282, 291 & 294) allowed to be filed in First Amendment challenge to commercial speech regulation in case later reviewed by Supreme Court in *Sorrell v. IMS Health Inc.* 131 S. Ct. 2653 (2011)).

newspapers in the state in its membership. The association was founded in 1879 as a nonprofit corporation to protect the freedoms and advance the professional standards of the press of Florida. Its purpose includes the promotion and encouragement of higher standards of journalism to the benefit of the industry and the public; the aid and advancement of the study of journalism; the encouragement of a better understanding between the public and the press; the encouragement of better business methods and practices within the industry; the encouragement of positive fraternal relations within the press; and the representation of the common interests of the press on issues of general welfare and mutual concern.

The First Amendment Foundation believes that government openness and transparency is critical to citizen trust and involvement in our democratic society – without Government in the Sunshine, civic engagement cannot bloom. Through ongoing monitoring of the state's public records and open meetings laws, and the education of government officials and the citizens they serve, the Foundation promotes the public's constitutional right to oversee and to participate in the governance process.

For more than 40 years, the Reporters' Committee for Freedom of the Press has provided free legal advice, resources, support and advocacy to protect the First Amendment and Freedom of Information rights of journalists working in areas where U.S. law applies, regardless of the medium in which their work appears.

The Society of Professional Journalists has been an industry leader for more than 100 years. Both nationally and through local chapters, the society fights battles for Freedom of Information and First Amendment rights that might not otherwise be fought

at all. As a result of the Society's grass-roots activism, the society is able to address vital issues confronting today's working journalist.

Allied Daily Newspapers of Washington is a trade association for newspapers include *The Seattle Times*. Its interest in this case arises from the fact that Paul Wright, editor and co-founder of *Prison Legal News,* was imprisoned for 17 years in Washington State until his release in 2003. Mr. Wright founded *Prison Legal News* in 1990 while imprisoned. Since then he has successfully litigated a wide variety of censorship and public records issues against prison systems, benefitting the public and the press generally. He is a 2007 recipient of the James Madison Award from the Washington Coalition for Open Government.

Although this case involves prison regulations and the regulations at issue have a particularly harsh impact on publications such as *Prison Legal News* that specialize in serving the prison community, the case is of great important to the amici and their members for a variety of reasons as well.

First, this case focuses on the power of the government to restrict advertising in the press. Advertising is not only essential for funding of a free press, advertising also is just as important to readers as editorial content. In some instances, the advertising is of even greater importance because it informs readers not just about the availability of products and services they may wish to buy, but it advises them of products and services that allow readers to improve themselves and their communities. The advertising also often helps advertisers to reach a mass market for their products and services, keeping costs low and achieving vital efficiencies that help the economy.

Second, publishers represented by the amici are directly threatened by the rule at issue in this case because they distribute publications such as *The Tallahassee Democrat,* the *Gainesville Sun, The Miami Herald* and many others within the Florida prison system and their publications also are subject to the restrictions imposed on the plaintiff's publication. Their publications also carry advertising for many goods and services, including telephone and other communications services that prisoners might wish to use now or in the future but are currently prohibited from using.

Third, government regulation often poses a direct threat to the ability of the press to report news and information that is of public importance simply because the regulations are so flexible that they can be used to punish criticism of the government or the reporting of news that leads to criticism of the government. Unless government discretion to regulate advertising is appropriately circumscribed, the discretion may be used for purposes of censorship forbidden by the First Amendment. Although this case will focus on prison regulations, the pleadings reflect that the Court will be asked to address more broadly the degree to which government discretion must be circumscribed.

While the interests of the amici are aligned with those of the plaintiff, the amici believe that they can bring an important perspective to this case that may not be provided by the plaintiff, showing how resolution of the issues will have an impact on publishers other than the plaintiff both inside and outside of Florida prisons. The amici organizations and their counsel also have extensive experience in dealing with governmental regulation of advertising that they believe will be of unique assistance to the Court. The amici, if allowed to file a memorandum in this case, will take precautions

HUNTON & WILLIAMS LLP

not to duplicate legal arguments that the plaintiff itself may submit and also to stay within the bounds of the issues that the pleadings fairly present. They also will consolidate the views of other press organizations that may wish to have their specific views considered as the Court adjudicates this important controversy.

If granted leave to file, the movants will do so at the same time that the plaintiff files its motion for summary judgment so that the filing of the memorandum will cause no delay in the proceedings or prejudice to any of the parties or the Court.

## CONCLUSION

The Court should grant this motion and allow the movants to submit an amicus memorandum of no more than 25 pages on or before the deadline for the plaintiff to file a motion for summary judgment.

    Respectfully submitted,

    Hunton & Williams LLP
    Attorneys for the Amici Curiae, the Florida Press Association, The First Amendment Foundation, The Reporters' Committee for Freedom of the Press, and Allied Daily Newspapers of Washington

    By    s/ Thomas R. Julin
          Thomas R. Julin & Jamie Z. Isani
          Florida Bar Nos. 325376 & 728861
          1111 Brickell Avenue – Suite 2500
          Miami, FL 33131
          305.810.2516 Fax 1601
          tjulin or jisani@hunton.com

CERTIFICATE OF CONFERENCE WITH OPPOSING COUNSEL

I hereby certify pursuant to Northern District of Florida General Rule 7.1 that on February 20, 2013, I asked counsel for defendant Kenneth S. Tucker for consent to the granting of this motion.  Counsel for Mr. Tucker advised me on February 21, 2003, that the Department of Corrections had given my request careful consideration but at this time the Department respectfully declined to consent to the amicus participation I had suggested.

*s/ Thomas R. Julin*
Thomas R Julin

CERTIFICATE OF SERVICE

I hereby certify that on the date I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, I also certify that the foregoing document is being served this day on all counsel or *pro se* parties identified on the following Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

*s/ Thomas R. Julin*
Thomas R Julin

SERVICE LIST
Case No. 4:12CV239-MW/CAS
United States District Court, Northern District, Tallahassee Division
Served via CM/ECF:

Randall C. Berg, Jr., Esq.
Florida Bar No. 318371
Dante P. Trevisani, Esq.
Florida Bar No. 72912
Florida Justice Institute, Inc.
3750 Miami Tower
100 S.E. Second Street
Miami, Florida 33131-2309
305-358-2081 Fax 0910
RBerg@FloridaJusticeInstitute.org
dtrevisani@floridajusticeinstitute.org

Randall C. Marshall, Esq.
Florida Bar No. 181765
American Civil Liberties Union Found. of Fla.
4500 Biscayne Blvd. Suite 340
Miami, Florida 33137
786-363-2700 Fax 1108
RMarshall@aclufl.org

Lance Weber, Esq.
Alissa Ruth Hull, Esq.
Fla. Bar No. 99801
Human Rights Defense Center
P.O. Box 2420, Brattleboro, VT 05303
802-579-1309 Fax 228-1681
lweber@humanrightsdefensecenter.org
ahull@humanrightsdefensecenter.org

Attorneys for the Plaintiff

Susan A. Maher, Esq.
Cedell Ian Garland, Esq.
Lance Neff, Esq.
Office of the Attorney General
The Capitol, PL-01
Tallahassee, Florida 32399-1050
 (850) 414-3300 fax 488-4872
susan.maher@myfloridalegal.com

Cedell.Garland@myfloridalegal.com
lance.neff@myfloridalegal.com

Counsel for Michael Crews, in his official capacity as Secretary of the Florida Department of Corrections

Hunton & Williams LLP