# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### Tallahassee Division

## Case No: 4:12-cv-239-MW/CAS

| | |
|---|---|
| PRISON LEGAL NEWS, | ) |
| a project of the HUMAN RIGHTS DEFENSE CENTER, | ) |
| a not-for-profit, Washington charitable corporation, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MARK S. INCH, in his official capacity as | ) |
| Secretary of the Florida Department of Corrections, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

## PLAINTIFF'S MOTION TO DETERMINE THE AMOUNT OF ATTORNEYS' FEES AND EXPENSES

Plaintiff, Prison Legal News (PLN), by and through its undersigned counsel and pursuant to Local Rule 54.1(E), hereby files this motion to determine the amount of attorneys' fees and expenses to which it is entitled. After nearly a decade of litigation, Plaintiff's counsel achieved a significant victory for PLN: vindication of its Due Process rights and assurances that it would be notified every time its publications are censored. Because of this victory, this Court has already determined that PLN is the prevailing party and therefore entitled to attorneys' fees; the only remaining issue is to determine the proper amount.

Although the Due Process victory was significant, PLN candidly acknowledges that a small reduction in fees is warranted due to its lack of success on the First Amendment claim.  As directed by the Court, PLN will explain below what it believes to be an appropriate adjustment.

In all, PLN's attorneys spent **3999.25** hours litigating this case over nine years. For reasons that follow, Plaintiff now seeks **$1,229,045.03** in fees and **$36,975.40** in expenses, for a total of **$1,266,020.43**.

## Factual and Procedural Background

The Court is likely familiar with the factual and procedural background of this case, but PLN would like to point out the various legal maneuvers that it was required to make to secure a victory on the Due Process claim, which Defendant vigorously fought at every stage.

PLN is the publisher of the criminal justice magazine *Prison Legal News*.  It has incarcerated subscribers in most state correctional systems, including Florida's. In 2010, it discovered that the FDC had begun censoring its magazine, but not providing notice of the censorship.  Attempts made to resolve the issue with the FDC were unsuccessful.  Thus, in preparation for litigation, significant effort was made to collect and investigate the numerous correspondences concerning the censorship of *PLN* sent by subscribers at various FDOC facilities since 2009.  Because of the sporadic censorship notices issued by Defendant, PLN needed to devote time to

catalog, respond, and track the various instances of censorship throughout the state to understand the contours of the First Amendment and Due Process violations at issue.   This process continued during the pendency of the case, as prisoner correspondence and other discovery showed that notice continued to be problematic, and largely non-existent, even after the filing of the lawsuit.  This information was essential at trial to demonstrate the significant and repeated due process failures by Defendant.

In November 2011, PLN filed its initial Complaint in the Southern District of Florida.  ECF 1.  The Complaint accused the FDC of censoring *Prison Legal News*— i.e., impounding it and not delivering it to its intended subscribers in prison— because the magazine contained advertisements for certain services.  The Complaint also accused FDC of failing to notify PLN of each impoundment, thereby depriving PLN of the ability to challenge the censorship.  PLN asserted a First Amendment claim based on the censorship and a Due Process claim for the failure to provide notice or an opportunity to appeal the censorship decision.  Shortly thereafter, PLN filed an Amended Complaint dropping certain defendants and adding two private corrections companies as defendants.[1]  ECF 14.

Defendant then moved to transfer venue to the Northern District of Florida, and simultaneously filed a Motion to Dismiss the Due Process claim, making

---

[1] Eventually, the private defendants were dismissed from the case through settlement.

baseless arguments that PLN's rights were not violated because it could have written a letter to the Secretary, and that it could have filed a state court lawsuit or challenged the Admissible Reading Material Rule through the Florida Administrative Procedure Act. ECF 18.  PLN was required to respond, ECF 42, and the motion was denied. ECF 65.

When the case was transferred to the Northern District, it was first mistakenly assigned to the Pensacola Division.  PLN filed a Motion to Transfer the case to the Tallahassee Division, ECF 49, which was granted. ECF 57.

Discovery then commenced.  Defendant served on PLN Interrogatories, Requests for Production, and Requests for Admission, for which PLN needed to investigate, assemble, collect and catalog information received from FDC facilities throughout the State over several years, and craft appropriate responses and objections.  PLN then drafted and served Interrogatories, Requests for Admission, and Requests for Production to all three Defendant (FDC, the GEO Group, and Corrections Corporation of America).  Approximately 22 depositions were taken in this case, including Rule 30(b)(6) depositions from both sides, requiring preparation and travel throughout the state.  PLN then drafted and sent a second and third round of Requests for Production to each defendant.  The FDC also served a second and then a third set of Interrogatories to PLN, which again required PLN, as a corporate entity, to conduct additional investigations to formally prepare responses.  Because

new information continued to come to light, and given the complexity of the case, both PLN and the FDC amended their Rule 26 Initial Disclosures six times.

Discovery did not always proceed smoothly.  PLN was forced to file a Motion to Compel when the FDC failed to respond to interrogatories and requests for production.  ECF 87.  Several of those discovery requests pertained to the notices that FDC had purportedly sent to prisoners about the impoundment *Prison Legal News*.  A telephonic hearing on the motion was held, ECF 95, and it was granted and denied in part, and otherwise rendered moot because FDC produced some documents in response to PLN's motion.  ECF 107.

The FDC then tried a different tactic to avoid responsibility on the Due Process claim: filing a motion for partial summary judgment, arguing that the Due Process claim was barred by res judicata because of PLN's first censorship case that was brought in the Middle District of Florida.  ECF 93.  This, again, forced PLN to respond, requiring extensive research into the procedural history of the first case.  ECF 120.  PLN thoroughly demonstrated that the Due Process claim from the first case was voluntarily dismissed—not on the merits—thereby defeating FDC's res judicata argument.  PLN also had to show that res judicata was inapplicable because the current lawsuit was based on facts that occurred *after* the dismissal of the first case.  This Court denied FDC's motion two days after PLN's response was filed. ECF 122.

The parties then moved to summary judgment briefing, which was extensive. FDC's motion contained 108 exhibits, ECF 135, and PLN's motion contained 31. The responses (ECF 152, 153) and replies (ECF 154, 155) each added more exhibits. Notably, FDC continued to press the failed argument that PLN was not entitled to *any* notice of the censorship of its magazine because it had state remedies available to it, or could use the state's rulemaking procedures.  ECF 135 at 23.  It also asserted that PLN had received "thousands of pages of notice," but failed to mention that nearly all of those notices (which were collected and tracked by PLN) came from prisoner correspondence, not the FDC.  *Id*.  And it argued that PLN was entitled to no notice at all because its publications were "mass mailings"—even though they were individually addressed and sent to a specific subscriber.  *Id*. at 24.

The FDC went so far as to send PLN a Rule 11 letter and proposed motion, demanding that PLN withdraw its Due Process claim, advancing the same baseless theories. The letter and motion were clearly attempts to intimidate and harass Plaintiff, and were improper attempts to re-argue points made in its summary judgment motion.  PLN was forced to spend dozens of hours researching and responding to this letter.

Because FDC, in violation of the Court's previous discovery order, then produced documents at or near the discovery deadline that were clearly covered by previous discovery requests, PLN was forced to file a Motion to Exclude such

evidence from the summary judgment record and trial.  ECF 159.  Cross motions for summary judgment were later denied.  ECF 195.  The Motion to Exclude was denied as moot because the evidence did not affect the court's summary judgment order.  ECF 194.  The Court invited PLN to raise the issue again as a motion in limine, which Plaintiff did.  ECF 204.  This time, the motion was granted in large part, and the Court agreed with PLN that most of the documents should be excluded from trial, noting that the late-disclosed discovery was "the precise mischief this Court addressed in the original discovery hearing."  ECF 208 at 3 n. 2.

The parties then began the extensive process of preparing for trial.  Due to the long passage of time, discovery was re-opened to take more depositions of newly disclosed witnesses.  ECF 199.  Because the proceedings of the first PLN case were critical to the issues raised in this one, PLN requested that FDC consent to admitting the relevant pleadings from the first case, in an effort to avoid calling unnecessary witnesses and records custodians.  FDC refused, and PLN was forced to file a Motion to Admit those documents, ECF 226, which was granted.  ECF 229.  A four-day bench trial was held in January 2015.  ECF 235, 236, 247.

The Court then requested post-trial briefing on specific issues, many of which centered on the Due Process claim.  ECF 241. FDC persisted in making meritless arguments that the Due Process claim should fail because a) its employees were merely negligent, b) PLN had waived its claim by failing to appeal (which was, of

course, impossible without notice of the censorship), and c) FDC's failure was excused because PLN received "actual notice" of the impoundments.   ECF 242. These arguments were eventually rejected by this Court.

This Court issued an Order on PLN's claims in August 2015, ECF 251, then an Amended Order on October 5, 2015.  ECF 279. The Court ruled in the FDC's favor on the First Amendment claim, finding that PLN had failed to show that the censorship of *Prison Legal News* was not reasonably related to legitimate penological interests.  *Id*. at 52.   However, this Court ruled in PLN's favor on the Due Process claim, finding that FDC had either failed to provide notice at all or failed to provide sufficient notice to PLN for a substantial number of magazine impoundments, conduct that amounted to a "systemic failure" that was "disregarded by FDOC administrators." *Id*. at 58.  This Court concluded that FDC would continue with these notice failures going forward "absent interjection by this Court."  *Id*. at 63.  Thus, the Court entered a judgment stating:

> Prison Legal News successfully proved that the Florida Department of Corrections has violated its right to due process under the Fourteenth Amendment. Prison Legal News has also shown that the Florida Department of Corrections' current censorship practices will continue to deprive Prison Legal News of due process of law.
>
> Accordingly, the Florida Department of Corrections is permanently enjoined from censoring Prison Legal News' written communications without due process of law. To comply with due process of law, this permanent injunction modifies the Florida Department of Corrections' current notification procedures as follows:

*Id*. at 64.  The Court went on to explain that the FDC must 1) notify PLN every time it impounds a written communication from PLN, 2) specify the portion of the rule that was alleged to be violated, and 3) inform PLN if the reason for the impoundment changes.  *Id*.  The Court entered a permanent injunction, and judgment was entered accordingly. ECF 280.

Undaunted, FDC made yet another last-ditch attempt to avoid responsibility for its Due Process violation, arguing—for the first time in five years of litigation—that the Secretary could not be held responsible for his employee's actions, an argument that was improperly embedded into a response to PLN's motion to alter or amend the judgment to include the PLRA findings.  ECF 265. It was eventually stricken by this Court, at PLN's urging.  ECF 274, 278.  FDC also filed a Motion to Stay the Injunction, ECF 255, which was denied. ECF 278.

PLN then appealed the resolution of the First Amendment claim, and the FDC cross-appealed the resolution of the Due Process claim. The Eleventh Circuit affirmed in all respects.  *Prison Legal News v. Sec'y, Fla. Dep't of Corr.*, 890 F.3d 954 (11th Cir. 2018).  With respect to the Due Process claim, the Eleventh Circuit noted the "remarkable failure rate" regarding FDC's notices to PLN, and held that this Court did not abuse its discretion in issuing the injunction.  *Id*. at 977.

## Argument

A reasonable attorneys' fees award is "properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 888 (1984). This amount, known as the "lodestar," can then be adjusted to account for the specifics of a particular case. *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988).

## I.     Plaintiff Seeks Reasonable Hourly Rates for Its Attorneys

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (quoting *Norman*, 836 F.2d at 1299). In this case, the first issue is to determine what the relevant legal community is.

### A. The Relevant Legal Community Is Miami

The relevant legal community is "the place where the case is filed." *Cullens v. Georgia Dep't of Transp*., 29 F.3d 1489, 1494 (11th Cir. 1994). Here, although much of the litigation occurred while the case was pending in Tallahassee, PLN actually filed the case in Miami. ECF 1. Defendant FDC then moved to transfer venue to the Northern District of Florida, ECF 18, which Plaintiff opposed. ECF 22. The court granted the motion, transferring the case to the Northern District of

Florida.  ECF 46.  Notably, Defendant did not request a venue transfer because the Miami venue was improper; the transfer was requested for the convenience of the parties and witnesses under 28 U.S.C. § 1404(a). ECF 18 at 4.  Similarly, the Court did not rule that the Miami venue was improper; only that Tallahassee was more convenient.  ECF 46.

In these circumstances, the venue transfer does not disturb the fact that the case was *filed* in Miami, which is therefore the relevant market for attorneys' fees purposes.  In *Cullens*, for example, the Eleventh Circuit held that the proper attorneys' fees market was Macon, Georgia—where the case was initially filed— and not Atlanta, even though the case had been transferred to Atlanta while it was pending.  29 F.3d at 1494.  *See also Tiara Condo. Ass'n, Inc. v. Marsh USA, Inc.*, 697 F. Supp. 2d 1349, 1353 (S.D. Fla. 2010) (finding that New York rates applied where case was filed in New York and transferred to Miami within five months of filing); *Polk v. New York State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983) (where case is transferred for the convenience of the parties under 28 U.S.C. § 1404(a), the relevant market is where the case was initially filed).

It was Defendant's decision—not PLN's—to seek a venue transfer.  Thus, this is not a situation in which PLN decided to hire out-of-town lawyers to file suit in a city with lower market rates.  Rather, PLN filed this case in Miami, with South Florida attorneys.  It did so in part because PLN had subscribers located in prisons

in the Southern District of Florida, and also because its lead counsel, Randall C. Berg, Jr. and the Florida Justice Institute, was located in Miami.  Mr. Berg was a highly experienced civil rights litigator who had represented PLN in the first challenge to the Admissible Reading Material Rule that was filed in the Middle District of Florida.  He was familiar with the law and the facts.  It was therefore reasonable and practical for PLN to seek him out for this case, and to file in a forum that was both a proper venue and convenient for its counsel.  The relevant legal market for attorneys' fees purposes is therefore Miami.

    B. <u>The Hourly Rates Sought Are Reasonable</u>

To repeat, "[a] reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Loranger*, 10 F.3d at 781 (quoting *Norman*, 836 F.2d at 1299).  Since civil rights lawyers rarely, if ever, charge and collect an hourly fee from their clients, there is likely no developed "market" from which to draw evidence of reasonable hourly rates.  *See Norman*, 836 F.2d at 1300 ("The court recognizes that few practitioners who regularly defend the poor and disadvantaged have the opportunity to bill and collect on an hourly basis. Accordingly, it may be virtually impossible to establish a prevailing market rate for such services.").  Recognizing this principle, "the Eleventh Circuit has held that the amount of attorneys' fees must be determined according to rates customarily charged for

similarly complex litigation, and is not to be limited by the amounts customarily charged in actions brought under the same statute." *Watford v. Heckler*, 765 F.2d 1562, 1568 (11th Cir. 1985). *See also Blanchard v. Bergeron,* 489 U.S. 87, 95 (1989) ("It is clear that Congress 'intended that the amount of fees awarded ... be governed by the same standards which prevail in other types of equally complex Federal litigation.'" (citation omitted)); *Varner v. Century Fin. Co.*, 738 F.2d 1143, 1148 (11th Cir. 1984) ("Under *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), the award must be based on customary fees in cases of like difficulty, *id*. at 718, whether or not such cases involve Truth-in-Lending violations."); *Norman*, 836 F.2d at 1300 (suggesting analogous markets may be antitrust and securities class actions, cases brought by business or professional associations against government entities, or employment discrimination cases). Thus, reasonable market rates are those charged by lawyers with similar skill, experience, and reputation, for litigation that is similarly complex.

Below is a chart outlining the hourly rates PLN is seeking for its attorneys. As permitted by the Eleventh Circuit, these are current, rather than historic rates. *Norman*, 836 F.2d at 1302.

| Name | Firm | Years of Legal Experience | Hourly Rate |
|------|------|--------------------------|-------------|
| Paul Clement | Bancroft | 27 | $900 |
| Randall C. Berg, Jr. | FJI | 41 | $825 |
| Randall Marshall | ACLU | 37 | $700 |
| Lance Weber | HRDC | 22 | $560 |
| Benjamin Stevenson | ACLU | 17 | $525 |
| Michael McGinley | Bancroft | 10 | $500 |
| Dan Marshall | HRDC | 17 | $475 |
| Sabarish Neelakanta | HRDC | 13 | $425 |
| Joshua Glickman | FJI | 12 | $400 |
| Shawn Heller | FJI | 12 | $400 |
| Dante P. Trevisani | FJI | 10 | $350 |
| Alissa Hull | HRDC | 9 | $335 |
| Robert Jack | HRDC | 9 | $335 |
| Monique Roberts | HRDC | 7 | $295 |
| Masimba Mutamba | HRDC | 7 | $295 |
| Stephanie Moore Throckmorton | FJI | 7 | $280 |
| Erica Selig | FJI | 7 | $280 |
| Chelsea Lewis | FJI | 5 | $250 |
| Law Clerks | | | $175 |
| Paralegals | | | $160 |

Plaintiff has attached the declaration of William Hill, a commercial litigation expert in the Miami office of Gunster, Yoakly, and Stewart, P.A.  Ex. 1. A 1987 graduate of Yale Law School, Mr. Hill is board certified in business litigation, has served as a fee expert in a number of prior cases, and is familiar with the fee rates

charged in the Miami market. He has the expertise to opine on the reasonableness of attorneys' hourly rates in the Southern District of Florida. In his opinion, Plaintiff seeks reasonable rates for its attorneys, given their skill and experience. *Id*.

All of the attorneys' resumes are attached to Mr. Hill's affidavit, which explain their qualifications in more detail. Many of the attorneys have specialized in civil rights cases for some time, and some have significant experience with First Amendment and Due Process claims. While all the attorneys' qualifications are significant, two in particular bear mentioning. Randall C. Berg, Jr. was perhaps the most experienced and well-respected prisoners' civil rights lawyer in the state of Florida.[2] He founded the Florida Justice Institute in 1978, and has handled major civil rights cases ever since, including dozens of successful cases—many of them class actions—against the Florida prison system.[3] *See Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 719 (5th Cir. 1974) ("An attorney specializing in civil rights cases may enjoy a higher rate for his expertise than others, providing his ability corresponds with his experience."). Importantly, he was lead counsel on the

---

[2] Sadly, Mr. Berg recently passed away. *See* https://www.law.com/dailybusinessreview/2019/04/11/our-dear-friend-randy-florida-legal-icon-randall-berg-jr-dead-at-70/.

[3] Court have commented on the high quality of Mr. Berg's work. *See Raines v. Florida*, 987 F. Supp. 1416, 1420 (N.D. Fla. 1997) ("Counsel for Plaintiffs [FJI] has spent many years litigating questions concerning prison conditions, and his advocacy has always been of the highest quality."); *Lawson v. Wainwright*, 108 F.R.D. 450, 457 (S.D. Fla. 1986) ("In the instant case, this Court has no doubt that Plaintiff [prisoner class] is represented by competent, diligent counsel [from FJI]. The Court file reflects that Plaintiff and his counsel will zealously pursue the interests of the class.").

previous case in which PLN sued over the censorship of its publication.  He was thoroughly familiar with the Admissible Reading Material Rule and FDC's justification for it, FDC's practices with respect to magazine censorship, and the application of First Amendment and Due Process concepts to the prison context. This background and experience helped PLN litigate this case more efficiently and effectively, especially when Defendant attempted to have the case dismissed on claim preclusion grounds, ECF 93, or when PLN argued that the previous case prohibited FDC from making certain arguments due to judicial estoppel.  ECF 139. Any reasonable client would pay a high price for such a lawyer in these circumstances.

Moreover, Paul Clement was recruited to represent PLN on the appeal.  Mr. Clement is the former Solicitor General of the United States, and has argued nearly 100 cases in the United States Supreme Court, giving him the distinct honor of having argued more Supreme Court cases since 2000 than any other lawyer—in or out of government.  He has also argued over 100 cases in the federal courts of appeals. He is currently a partner in the Washington D.C., office of Kirkland & Ellis LLP, where his normal hourly rate is $1745 per hour.  For purposes of this motion, and due to the public interest and constitutional issues at play in this litigation, Mr. Clement's rate has been reduced to $900 per hour – an almost 50% reduction from his regular billing rate.

Finally, the hourly rates requested comport with those awarded in other cases. *See Garza v. City of Los Angeles*, No. 16-CV-3579-SVW (C.D. Cal. June 25, 2018) Order, Ex. 2 (finding $875 to be reasonable hourly rate for Los Angeles attorney with 33 years of experience); *Tiara Condo*, 697 F. Supp. 2d at 1353 (finding a range of $225 for junior associates to $675 for senior partners to be reasonable); *Spadaro v. City of Miramar*, Case No. 11-CV-61607 (S.D. Fla. February 14, 2014) Order, Ex. 3 (awarding $600 to civil rights attorney with 32 years' experience); *D'Agostino v. Keitel*, No. CV 18-MC-80460, 2019 WL 416724, at *2 (S.D. Fla. Feb. 1, 2019) ($340 for attorney with 11 years of experience—noting $370 was the attorney's standard rate—$450 for attorney with 11 years of experience, $525 for attorney with 35 years of experience—noting $625 was the standard rate); *Rowett v. Wish Wash 2 LLC*, No. 16-81904-CIV, 2018 WL 4869441, at *3 (S.D. Fla. Sept. 20, 2018) ($350 per hour for attorney with 9 years of experience);[4] *S.E.C. v. Mutual Benefits Corp.*, No. 04-60503, 2009 WL 4640654 at *2-3 (S.D. Fla. Dec. 7, 2009) (awarding "blended" rate, incorporating partners and associates, of $450 and citing to the October 12, 2009, Daily Business Review "South Florida Billing Survey" for the proposition that "the most talented attorneys in the area billed between $550 and $765 per hour"); *Topp, Inc., v. Uniden America Corp.*, No. 05-21698, 2007 WL 2155604 (S.D. Fla. July 25, 2007) ($551 per hour on motion to compel deposition);

---

[4] Years of experience were determined using the Florida Bar's online directory.

*CC-Aventura, Inc. v. Weitz Co., LLC*, No. 06-21598, 2008 WL 276057 (S.D. Fla. Jan. 31, 2008) ($400 per hour for eighth-year associate on sanctions motion); *Textron Fin. Corp. v. RV Sales of Broward, Inc*., No. 08-61449, 2010 WL 2889908 at *4, *8 (S.D. Fla. June 29, 2010) (awarding averaged rates of $537.90 per hour for an attorney with over 30 years of experience, $368.12 for an attorney with 11 years of experience, and $183-$250 for attorneys licensed less than 2 years).

The rates sought for law clerks and paralegals are also reasonable.  *See Carruthers v. Israel,* 274 F. Supp. 3d 1345, 1354 (S.D. Fla. 2017) (awarding $160 for law clerks); *Bacon v. Stiefel Labs., Inc*., No. 11-20489-CIV, 2014 WL 4825279, at *4 (S.D. Fla. Sept. 25, 2014) (finding $160 per hour reasonable rate for law clerks in securities case).

## II.    Plaintiff Seeks Compensation for a Reasonable Number of Hours

"Hours reasonably expended" means "billable hours — that is, work that would be paid for by a reasonable client of means seriously intent on vindicating the rights in issue." *Perkins v. Mobile Housing Board*, 847 F.2d 735, 738 (11th Cir. 1988).  Reasonableness "is determined by the profession's judgment of the time that may be conscionably billed and not the least time in which it might theoretically have been done." *Norman*, 836 F. 3d at 1306.  Hours "may not be deducted unless the court determines that the profession generally would not bill at all for the type of activity or for the quantity of time devoted to the activities." *Perkins*, 847 F.2d at

738. "Sworn testimony that, in fact, it took the time claimed is evidence of considerable weight on the issue of the time required in the usual case and therefore, it must appear that the time claimed is obviously and convincingly excessive under the circumstances." *Id.* at 738.

PLN's attorneys kept contemporaneous time records, which are attached as exhibits 4 (for the district court) and 5 (for the appeal)[5], along with declarations from the attorneys' attesting to the accuracy of the records. Ex. 6.  Its attorneys have not engaged in block billing—that is, each entry is broken into discrete tasks with a clear explanation of the amount of time spent on each one.  *See Norman*, 836 F.2d at 1303 (time sheets must show the "general subject matter of the time expenditures" with "sufficient particularity so that the district court can assess the time claimed for each activity").  Moreover, although PLN is claiming time for numerous attorneys, this reflects the fact that several of those attorneys moved to other firms during the nine-year span of this case, and were replaced by other attorneys.  Not all attorneys were simultaneously working on the case.  Further, the use "of a team of attorneys who divide up the work is common" practice, and not grounds to reduce the fee award.  *Johnson v. Univ. Coll. of Univ. of Alabama in Birmingham*, 706 F.2d 1205, 1208 (11th Cir. 1983).  *See id.* ("a reduction is warranted only if the attorneys are

---

[5] The totals listed at the bottom of these time records were tabulated by Microsoft Excel.  Due to rounding errors, they are slightly different from the totals in the charts below, which were tabulated by multiplying each attorney's hours by their hourly rate.

*unreasonably* doing the *same* work.") (emphasis in original). The time entries represent the distinct contribution of each member of the legal team.

Finally, PLN's fee expert William Hill has reviewed the time records and has attested that the number of hours PLN's attorneys spent on this matter was reasonable.  Ex. 1 at ¶ 11.

As demonstrated by the charts below, PLN's attorneys spent a total of 3,999.25 hours on this case. Multiplied by their hourly rates, this yields a lodestar figure of $1,737,299.25 ($1,441,581.60 for the district court and $295,717.65 for the appeal).

### III.   Adjustments to the Lodestar

After calculating the lodestar, the next step is to apply any necessary adjustments.  Here, adjustments are appropriate for two reasons: billing judgment and lack of success.

### A. Billing Judgment

Plaintiff acknowledges that it "must exercise [its] own billing judgment to exclude any hours that are excessive, redundant, or otherwise unnecessary." *Galdames v. N & D Inv. Corp.*, 432 F. App'x 801, 806 (11th Cir. 2011) (quotations omitted). Rather than pore over the thousands of time entries to exclude specific ones, the Eleventh Circuit has held that it is permissible to simply make an across-the-board percentage cut to account for possible excessive or unnecessary time

entries. *Loranger*, 10 F.3d at 783 ("When faced with a massive fee application, however, an hour-by-hour review is both impractical and a waste of judicial resources."). *See also Villano v. City of Boynton Beach*, 254 F.3d 1302, 1311 (11th Cir. 2001); *Tasby v. Estes*, 651 F.2d 287, 289 (5th Cir. July 17, 1981) ("[T]he use of a number of attorneys frequently results in some duplication of effort, and a district court may take this factor into account by deducting some small percentage of the total hours.") (quoting *Northcross v. Board of Education*, 611 F.2d 624, 637 (6th Cir. 1979)); *Ceres Environmental Services, Inc. v. Colonel McCrary Trucking, LLC*, 476 F. App'x 198, 203-204 (11th Cir. 2012) (affirming 10% reduction for block billing, which Plaintiffs have avoided).

PLN believes that its attorneys have avoided engaging in excessive, unnecessary, or duplicative tasks.  Nonetheless, PLN believes a small percentage reduction is warranted, both for the District Court proceedings and the appeal, as a reasonable exercise of billing judgment.  That percentage will be incorporated into the reduction for lack of success, which is described below.

B. Lack of Success

This Court has instructed PLN to "specifically explain why it believes this Court should not reduce any award in light of Plaintiff's loss on its First Amendment Claim."  ECF 322 at 3-4.  Plaintiff candidly acknowledges that its fee award should

be reduced for lack of success on the First Amendment claim.  However, the reduction should be relatively minor, as explained below.

PLN acknowledges the Supreme Court's teaching that the degree of success must be considered when determining a fee award. *Hensley*, 461 U.S at 436. However, the Court has also recognized that "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Id.* at 435 (time can be reduced for hours spent on unsuccessful claims if they are "*distinct in all respects* from [the] successful claims") (emphasis added). *See also Dowdell v. City of Apopka, Florida*, 698 F.2d 1181, 1187 (11th Cir. 1983) ("The theory that fee applications should be dissected into 'winning' and 'losing' hours with the latter being nonreimbursable contradicts the law of this circuit.").

The reasoning behind this principle is that, "in complex civil rights litigation, and particularly in prisoners' rights cases, issues are overlapping and intertwined." *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. Jan. 29, 1981), *overruled on other grounds*, 790 F.2d 1174 (5th Cir. 1986). *See also Hensley*, 461 U.S. at 435 (where case presents "a common core of facts" or is "based on related legal theories," "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis").

That was certainly the case here.  The vast majority of counsel's time was devoted to work advancing both claims; it is simply not possible, nor is it required,

to isolate time entries according to which claim they pertain to.  The Complaint included facts about the FDC's lack of justification for applying the Admissible Reading Material Rule to PLN, and also facts about notices that PLN should have been receiving.  Interrogatories and Requests for Production asked about justifications for the Rule and any documents relating to those justifications, and also asked about the notice process and for supporting documentation.  Depositions explored justifications for the Rule, the application of the Rule, and the notice process.  Summary judgment and other briefing covered both issues, and the trial was devoted to both issues as well.

Further, this was not a mere technical victory; the Due Process claim was significant. Notice and an opportunity to be heard have been the cornerstone of procedural due process "[f]or more than a century." *Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004) (citations/quotations omitted). Without proper notice, PLN has no way of determining whether its publications are reaching their intended recipients, and no way of ensuring that the impoundments are proper under FDC's own rule. Moreover, proper notice of the specific pages that FDC believes violate the Rule is helpful for PLN to determine how to comply with it, and whether compliance is even possible, given its resources.  Defining the contours of what is prohibited is a critical aspect of the First Amendment.  *See Grayned v. City of Rockford,* 408 U.S. 104, 109 (1972) ("a vague statute . . . operates to inhibit the exercise of [First Amendment]

freedoms[,]" because "[u]ncertain meanings inevitably lead citizens to steer far wider of the unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked." (citations omitted; second ellipses in original)).  And the public benefit of vindicating a constitutional right cannot be ignored when determining a fee award.  *Villano*, 254 F.3d at 1307; *Popham v. City of Kennesaw*, 820 F.2d 1570, 1580 (11th Cir. 1987) ("The affirmation of constitutional principles produces an undoubted public benefit that courts must consider in awarding attorneys' fees under Section 1988.").  Thus, the Due Process claim was an integral part of this case, and PLN's victory reinforces the First Amendment principle it seeks to vindicate.

Moreover, victory on the Due Process claim was not a foregone conclusion; it was only achieved through PLN's attorneys' tenacious advocacy in the face of vigorous opposition by the FDC.  As explained above, the FDC attempted to derail the Due Process claim in every conceivable way.  It asserted similarly baseless arguments multiple times, including in a motion to dismiss, motion for partial summary judgment, Rule 11 letter, second motion for summary judgment, post-trial briefing, an argument to reconsider the injunction improperly embedded in an unrelated filing, a motion to stay the injunction, and an appeal.  PLN was required to, and did successfully, repel those arguments every time.  Further, developing the factual presentation was complicated.  It involved reviewing and analyzing several years of notices PLN had received, determining where they came from, determining

who at PLN could testify about those matters, and presenting them in an orderly fashion to the Court.  All of this legal and factual development required a high level of legal skill, expertise, and professionalism.[6]

Because of the priority Congress has placed on the vindication of civil rights, reductions should be made sparingly.  *See Bivins v. Wrap It Up, Inc.*, 380 F. App'x 888, 891 (11th Cir. 2010) (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)) ("There is a 'strong presumption' that the lodestar reflects a reasonable sum the attorneys deserve."); *Fox v. Vice*, 563 U.S. 826, 833 (2011) (quotations/citations omitted ("When a plaintiff succeeds in remedying a civil rights violation," . . . he serves as a private attorney general, vindicating a policy that Congress considered of the highest priority.").  Nonetheless, PLN recognizes that the First Amendment claim was a significant part of this case, and that an across-the-board reduction may be appropriate.  *See Popham*, 820 F.2d at 1581 ("However, in *Hensley*, 461 U.S. at 436–37, 103 S.Ct. at 1941, the Supreme

---

[6] While the Supreme Court has receded from the factors outlined *in Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), because they are subsumed within the lodestar analysis, *Perdue v. Kenny A.*, 559 U.S. 542, 553 (2010), they can still be relevant to deriving the lodestar.  *See Loranger*, 10 F.3d at 781 n. 6.  The factors include 1) the time and labor required, 2) the novelty and difficulty of the questions, 3) the requisite legal skill, 4) the preclusion of other employment, 5) the customary fee, 6) whether the fee is fixed or contingent, 7) time limitations imposed, 8) the results obtained, 9) the experience, reputation, and ability of the attorneys, 10) the undesirability of the case, and 12) awards in similar cases.  Given the above-described time and effort that was necessary to achieve this victory, factors 1 through 4, among others, weigh in PLN's favor.

Court explicitly stated that a court could simply reduce the award to account for the plaintiff's limited success instead of eliminating hours specifically expended on unsuccessful claims.").

Given these considerations, to account for the exercise of billing judgment and the lack of success on the First Amendment claim, PLN proposes a 25% reduction to the fees incurred in the District Court proceedings, and a 50% reduction to the fees incurred for the appeal.  This adequately accounts for the practical result, while still recognizing the importance of the Due Process claim.  Although every case is fact-specific, other courts have made similar reductions.  *See, e.g., Perkins*, 847 F.2d at 739 (affirming a district court's 15% reduction in the amount of fees claimed based on partial or limited success).

A final summary of the fees for the District Court proceedings is below.[7]

| District Court | | | | |
|---|---|---|---|---|
| **Name** | **Firm** | **Number of Hours** | **Hourly Rate** | **Total Fees** |
| Randall C. Berg, Jr. | FJI | 495.52 | $825 | $408,804.00 |
| Randall Marshall | ACLU | 14 | $700 | $9,800.00 |
| Lance Weber | HRDC | 442.05 | $560 | $247,548.00 |
| Benjamin Stevenson | ACLU | 22 | $525 | $11,550.00 |
| Dan Marshall | HRDC | 4.40 | $475 | $2,090.00 |
| Sabarish Neelakanta | HRDC | 210.60 | $425 | $89,505.00 |
| Joshua Glickman | FJI | 138.90 | $400 | $55,560.00 |
| Shawn Heller | FJI | 5.79 | $400 | $2,316.00 |
| Dante P. Trevisani | FJI | 1,107.64 | $350 | $387,674.00 |
| Alissa Hull | HRDC | 258.30 | $335 | $86,530.50 |
| Robert Jack | HRDC | 25.60 | $335 | $8,576.00 |
| Masimba Mutamba | HRDC | 24.30 | $295 | $7,168.50 |
| Monique Roberts | HRDC | 9.6 | $295 | $2,832.00 |
| Stephanie Moore Throckmorton | FJI | 71.82 | $280 | $20,109.60 |
| Erica Selig | FJI | 9.45 | $280 | $2,646.00 |
| Chelsea Lewis | FJI | 63.27 | $250 | $15,817.50 |
| Law Clerks | | 83.10 | $175 | $14,542.50 |
| Paralegals | | 428.20 | $160 | $68,512.00 |
| **Total** | | **3414.54** | | **$1,441,581.60** |
| 25% Reduction | | | | -$60,395.40 |
| **Total Discounted Fees** | | | | **$1,081,186.20** |

---

[7] A chart is also attached as exhibit 7 which summarizes the number of hours spent by category. This chart shows that PLN's attorney spent a reasonable amount of time on each stage of the case.

Similarly, below is a final summary of fees sought for the appeal.

| Appeal | | | | |
|---|---|---|---|---|
| Name | Firm | Number of Hours | Hourly Rate | Total Fees |
| Paul Clement | Bancroft | 51.75 | $900 | $46,575.00 |
| Michael McGinley | Bancroft | 232.50 | $500 | $116,250.00 |
| Randall C. Berg, Jr. | FJI | 39.81 | $825 | $32,843.25 |
| Lance Weber | HRDC | 59.50 | $560 | $33,320.00 |
| Dan Marshall | HRDC | 7.20 | $475 | $3,420.00 |
| Sabarish Neelakanta | HRDC | 82.60 | $425 | $35,105.00 |
| Dante P. Trevisani | FJI | 45.43 | $350 | $15,900.50 |
| Masimba Mutamba | HRDC | 12.08 | $295 | $3,563.60 |
| Law Clerks | | 8.5 | $175 | $1,487.50 |
| Paralegals | | 45.33 | $160 | $7,252.80 |
| **Total** | | 584.70 | | **$295,717.65** |
| 50% Reduction | | | | -$147,858.82 |
| **Total Discounted Fees** | | | | **$147,858.83** |

Thus, the total amount of fees sought, for the District Court proceedings and the appeal, and after all adjustments are made, is **$1,229,045.03**.

## IV.   Costs and Expenses

This Court has already ruled that PLN is entitled to $6,204.42 in taxable costs. ECF 326.  PLN also seek **$36,975.40** in litigation expenses.  In the Eleventh Circuit, "with the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988." *Dowdell*, 698 F.2d at 1192 (awarding expenses for travel, telephone,

and postage, and citing approvingly to cases awarding expenses for food, lodging, and photocopying).  In determining which expense are compensable, "the standard of reasonableness is to be given a liberal interpretation."  *Id*.

The breakdown of what PLN seeks for expenses is attached as exhibit 8.[8] This does not include $6,169.00 that was paid to experts E. Eugene Miller and Margaret Savage, which PLN is not seeking.  All of the expenses incurred were reasonable and made for the purpose of advancing this case.  PLN should therefore be awarded its full litigation expenses.

## Conclusion

Plaintiff respectfully requests that this Court award PLN **$1,229,045.03** in fees and **$36,975.40** in expenses, for a total of **$1,266,020.43**.  Adding the $6,204.42 that PLN was already awarded for taxable costs brings the final total to **$1,272,224.85.**

This amount represents the fees, costs, and expenses incurred as of April 11, 2019.  PLN will supplement this motion with any further fees incurred, if necessary.

---

[8] PLN has not included receipts for the expenses, however they can be provided to the Court or Defendant upon request.

**Certificate of Counsel**.  Pursuant to Local Rule 7.1(B), N.D. Fla., Plaintiff's counsel has conferred with Defendant's Counsel regarding the relief sought in this motion.  Defendant opposes the relief sought herein.

**Word Count**.  Pursuant to Local Rule 7.1(F), N.D. Fla., the word count of this Motion is 6,718 words.

Respectfully submitted,

**Dante P. Trevisani**
Fla. Bar No. 72912
DTrevisani@FloridaJusticeInstitute.org
Florida Justice Institute, Inc.
3750 Miami Tower
100 S.E. Second Street
Miami, FL 33131-2309
T. 305.358.2081
F. 305.358.0910

**Sabarish Neelakanta**
Fla. Bar No. 26623
Human Rights Defense Center
P.O. Box 1151
Lake Worth, FL 33460
561.360.2523 Office
866.735.7136 Fax
E-Mail:
sneelakanta@humanrightsdefensecenter.org

**Benjamin James Stevenson**
Fla. Bar. No. 598909
ACLU Found. of Fla.
P.O. Box 12723
Pensacola, FL  32591-2723
T. 786.363.2738
F. 786.363.1985
bstevenson@aclufl.org

By:   *s/ Dante P. Trevisani*
        Dante P. Trevisani
        Counsel for Prison Legal News

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed today, April 12, 2019, the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all persons registered for this case on the following service list, including opposing counsel.


By:   *s/ Dante P. Trevisani*
         Dante P. Trevisani