**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

**PRISON LEGAL NEWS,**

     Plaintiff,

**v.**                                                                    **Case No.: 4:12cv239-MW/CAS**

**MARK S. INCH, in his official**
**Capacity as Secretary of the**
**Florida Department of Corrections,**

     Defendant.

_____/

## DEFENDANT'S RESPONSE TO PLAINTIFF'SMOTION TO DETERMINE AMOUNT OF ATTORNEYS' FEES AND EXPENSES

     Defendant Inch, Secretary of the Florida Department of Corrections ("Inch," "Secretary," or "Defendant"), through undersigned counsel and 42 U.S.C. § 1988, Rule 54, Federal Rules of Civil Procedure ("FRCP"), and Northern District local rule 54.1, hereby responds to, and respectfully requests this Court to substantially reduce the fee award sought in "Plaintiff's Motion to Determine the Amount of Attorneys' Fees and Expenses." (Docs. 329.)  In support, the Defendant states as follows:

### Preliminary Statement

     Plaintiff (Prison Legal News, "PLN") brought a due process claim

challenging an administrative rule of the Florida Department of Corrections ("FDC") and a First Amendment censorship claim that barred the Plaintiff's publication Prison Legal News from being sold to prisoners in the State of Florida. The Plaintiff was unsuccessful on both counts, and, at most, was awarded an injunction that required compliance with the FDC notification rule as written. Both parties filed unsuccessful appeals. Then, the Plaintiff further sought certiorari review in the United States Supreme Court that was wholly unsuccessful.

Now in the instant motion, the Plaintiff seeks a total of fees for the district court case in the amount of $1,081,186.20, fees for the appeal in the amount of $147,858.83, and expenses in the amount of $36,975.40. (Doc. 329.) The Plaintiff alleges that both claims are intertwined, that a 25% reduction for the trial court and 50% reduction for the appeal represent a fair reduction from the actual recorded fees, and that they are entitled to the market rate from South Florida. (Id.)

There are multiple problems with their arguments, and their fees and expenses should be substantially reduced for the following reasons:

I.       The market rates should be analyzed using the market rates in the United States District Court for the Northern District of Florida, as this is where it was ultimately determined this case should have been filed. And, there are knowledgeable attorneys in the Northern District who could have brought these

2

claims.

II.    The issues are not intertwined, and, in accordance with precedent, the case should be analyzed as two cases where the First Amendment case was unsuccessful, and the due process case was only partially successful.

III.    The Plaintiff's claimed time is objectionable, thus limiting any award for the reasons described below:

> 1.    The Plaintiff and co-defendants Corrections Corporation of America ("CCA") and the GEO Group Inc. ("GEO") settled where "[e]ach party [were] to bear its own attorneys' fees and costs," (Doc. 116), yet the Plaintiff is seeking from the Secretary fees associated with these dismissed co-defendants, totaling 380.27 hours in the amount of $157,722.34.
>
> 2.    The Plaintiff is seeking non-billable fees for press releases, totaling 5.33 hours in the amount of $2,802.20 for the trial court and 1.90 hours in the amount of $1,115.00 for the Eleventh Circuit appeal ("appeal").
>
> 3.    The Plaintiff seeks non-compensable fees for conducting administrative tasks, such as copying/scanning that total 27.65 hours in the amount of $6,083.45 for the trial court.
>
> 4.    The Plaintiff inappropriately seeks fees for its paralegals that performed tasks, not as paralegals on behalf of an attorney, but as witnesses, totaling 36.70 hours in the amount of $5872.00 for the trial court.
>
> 5.    The Plaintiff inappropriately sought fees for work associated with Amicus filers, totaling 14.47 hours in the amount of $6,882.20 for the trial court and 27.62 hours in the amount of $16,231.78 for the appeal

6.     The Plaintiff over-lawyered many portions of the case by billing for work done by outside counsel while also billing for in-house counsel reviewing/monitoring the filing and conferring about the case, and billing for multiple attorneys attending depositions conducted by one attorney and attending the appeal oral argument conducted by one attorney, totaling 449.75 hours in the amount of $179,723.73 for the trial court and 129.27 hours in the amount of $59,079.78 for the appeal.

7.     The Plaintiff billed for tasks that they have not shown were necessary to advance the litigation, totaling 27.63 hours in the amount of $7,609.73 for the trial court and 3.42 hours in the amount of $1,541.22 for the appeal.

8.     The Plaintiff billed for tasks that appear to be from other case(s), totaling 0.95 hours in the amount of $407.25 for the trial court.

9.     The Plaintiff block billed for tasks, totaling 67.06 hours in the amount of $28,845.80 for the trial court and 1.00 hours in the amount of $613.00 for the appeal.

10.     The Plaintiff did not provide sufficient detail as to specific tasks performed, totaling 411.91 hours in the amount of $160,544.39 for the trial court and 225.90 hours in the amount of $106,241.15 for the appeal.

11.     The Plaintiff billed for motions that did not prevail, totaling 93.38 hours in the amount of $32,536.82 for the trial court and 3.70 hours in the amount of $1,462.00 for the appeal.

12.     While for most of the billing, the Plaintiff did not separate for work performed on the First Amendment claim versus the due process claims, when the Plaintiff did indicate a First Amendment related task, it billed a total of 752.71 hours in the amount of $337,030.56 for the trial court and 359.27 hours in the amount of $169,997.58 for the appeal.

4

13.    When the task cannot be attributed to either claim, the Defendant objects to the limited success the Plaintiff had in the overall case where, at best, the Plaintiff prevailed on half of the due process claim, and wholly lost on the First Amendment claim, and, as such, objects to 75% of these types of tasks where the Plaintiff's billing totals 1965.73 hours in the amount of $806,907.00 for the trial court and 201.87 hours in the amount of $114,485.70 for the appeal.

14.    After reviewing all of the time spent on multiple events/filings in the case, Defendant objects to the excessive nature of the time spent where it appears that the Plaintiff over-lawyered the case three times what should have been spent on the events/filings, and, as such, Defendant objects to 67% of these types of tasks where the Plaintiff's billing totals 995.11 hours in the amount of $394,513.92 for the trial court and 495.03 hours in the amount of $249,758.95 for the appeal.

15.    Lastly, the Plaintiff seeks expenses totaling $36,976.38, but, after the objections are applied, Defendant argues that only $2,345.95 is recoverable.

## **General Procedural History**

Prior to the final (amended) order in this case, PLN's due process claim sought a rule change in the form of notice for every copy of every issue impounded by the FDC that was rejected at the summary judgment stage. (Doc. 195 at 43-45.) This was their requested relief in the operative complaint. (Doc. 14 at 14.) The remaining due process issue that proceeded to trial was whether the initial impoundment notice was properly being sent to PLN. (Doc. 14 at 45-46.) The due process relief initially sought through this lawsuit by PLN was denied at summary

judgment.

Then, PLN prevailed on only the limited, remaining due process claim, while the Defendant prevailed entirely on the First Amendment claim. (Doc. 279-280.) The 66 page Court order contained only *12 pages on due process*. (Doc. 279.) Cross appeals to the Eleventh Circuit Court of Appeals were taken, and the Court's order was affirmed on May 17, 2018. (Doc. 300.) PLN's oral argument was approximately 18.5 minutes with only approximately *1 minute on due process*.[1] The 19 page Eleventh Circuit opinion included *2 pages on due process*. PLN v. Sec'y, Fla. Dep't of Corr., 890 F.3d 954 (11th Cir. 2018). The Court's order on the due process claim did not change an existing FDC rule, but required full implementation of a rule that "on its face satisfies [due process] requirements." Id. at 976.

Both parties moved for costs for the appeal, but the Eleventh Circuit stated that "[e]ach party is ordered to bear its own costs." Then, on August 2, 2018, PLN filed a petition for writ of certiorari in the United States Supreme Court, which was denied on January 7, 2019.

Regarding fees, the Court ordered the Plaintiff to file a brief outlining the amount of fees the Plaintiff believes this Court should award by March 15, 2019,

and to "specifically explain why it believes this Court should not reduce any award in light of Plaintiff's loss on its First Amendment Claim." (Doc. 322.) On April 12, 2019, the Plaintiff filed a Motion to Determine the Amount of Attorneys' Fees and Expenses. (Doc. 329.) The Motion is supported by an expert affidavit. (Doc. 329-1.) The Motion seeks a total of fees for the district court case in the amount of $1,081,186.20, fees for the appeal in the amount of $147,858.83, and expenses in the amount of $36, 975.40. (Doc. 329.) There are a total of 4004 lines of billing statements that had to be analyzed.

This response follows. (Doc. 336.)

## Memorandum of Law and Argument

In order for the plaintiff to be the prevailing party in 42 U.S.C. § 1988 cases, the plaintiff must acquire the primary relief sought. Capital Asset Research Corp. v. Finnegan, 216 F.3d 1268, 1272 (11th Cir. 2000). If a plaintiff succeeded on any significant issue in litigation which achieved some of the benefit the parties sought in bringing suit, the plaintiff succeeded in materially altering the legal relationship between themselves and the defendant, and should be awarded fees; but the **_degree_** of the plaintiff's success goes to the amount of the fee. Crowder v. Housing Authority of City of Atlanta, 908 F.2d 843, 849 (11th Cir. 1990) (internal

---

[1] A copy of the transcript of the appeal's oral argument is available upon

quotations omitted).    However, a fee should not be awarded if "special circumstances would render such an award unjust."  Id. at 429 (quoting Hensley v. Eckerhart, 461 U.S. 424, 429, 103 S. Ct. 1933 (1983)).

Downward adjustments are appropriate given "either the exceptional or limited nature of the relief obtained," and must consider the "relationship between the amount of the fee awarded and the results obtained."  Hensley, 461 U.S. at 437. When determining fees, the degree of success obtained is the central factor, and when the case contains two distinct claims the case must be analyzed as if it were separate lawsuits associated with each claim.   Id. at 435-36.   As explained in Hensley,

> In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit, even where the claims are brought against the same defendants – often an institution and its officers, as in this case – counsel's work on one claim will be unrelated to his work on another claim.  Accordingly, work on an unsuccessful claim cannot be deemed to have been "expended in pursuit of the ultimate result achieved."  Davis v. County of Los Angeles, 8 E.P.D. ¶ 9444, at 5049 (CD Cal. 1974).  The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.

> * * *

> If, on the other hand, a plaintiff has achieved only partial or limited

request.

> success, the product of hours reasonably expended on the litigation as
> a whole times a reasonable hourly rate may be an excessive amount.
> This will be true even where the plaintiff's claims were interrelated,
> nonfrivolous, and raised in good faith.  Congress has not authorized
> an award of fees whenever it was reasonable for a plaintiff to bring a
> lawsuit or whenever conscientious counsel tried the case with
> devotion and skill.  Again, the most critical factor is the degree of
> success obtained.

Hensley, 461 U.S. at 434-36.  When there is only limited success, consideration

must be given to whether the losing claim(s) is intertwined with the successful

claim(s).   Id. at 433-37.   When both claims derive from a common core of

operative facts, the focus must be on "the significance of the overall results as a

function of total reasonable hours."   Norman v. Housing Authority of City of

Montgomery, 836 F.2d 1292, 1302 (11th Cir. 1988).  The correctness and the

amount of a fees award are "strongly influenced by the extent" the plaintiff

prevails.  Adams v. Reed, 567 F.2d 1283, 1288 (5th Cir. 1978).[2]

In its determination of whether the fee sought is reasonable, the court should

keep in mind that the purpose of any fee-shifting statute is only to enable the

plaintiffs to attract competent counsel – not to provide a windfall to attorneys.

Blum v. Stenson, 465 U.S. 886, 897, 104 S. Ct. 1541, 1548 (1984).  Hensley and

---

[2]  In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en
banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the
former Fifth Circuit handed down prior to the close of business on September  30,
1981.

<u>Pennsylvania v. Delaware Valley Citizens' Council</u>, 478 U.S. 546, 106 S. Ct. 3088 (1986), set the general standard for determining a reasonable attorneys fee in civil rights cases.  These opinions place "the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  <u>Hensley</u>, 461 U.S. at 433; <u>see also</u> <u>Norman</u>, 836 F. 2d at 1299.

In addition to determining whether the work done was directly incurred in proving an actual violation of federal rights, the court must consider whether the work done was "useful and of a type ordinarily necessary to secure the final result obtained from the litigation."  <u>Delaware Valley</u>, 478 U.S. at 561; <u>see also</u> <u>Gray v. Romero</u>, 709 F. Supp. 325, 327 (D.R.I. 1989) (courts must determine whether the work is sufficiently closely related to the litigation).

Thus, courts will exclude from the fee calculation hours that were "excessive, redundant, or otherwise unnecessary."  <u>Hensley</u>, 461 U.S. at 434.  A convenient analytical guide provides that hours that would not generally be billed to one's own client are not properly billed to an adversary.  <u>Bell v. United Princeton Properties, Inc.</u>, 884 F.2d 713, 721 (3d Cir. 1989).

The *movant* has the burden of showing entitlement to compensation for the claimed hours and activities. <u>Von Clark v. Butler</u>, 916 F.2d 255, 259 (5th Cir.

1990). This necessitates going "line, by line" through the billing records supporting the request to ensure that the movant has met his or her burden. Evans v. Port Authority of New York and New Jersey, 273 F.3d 346, 362 (3d Cir. 2001). This review must be "a thorough and searching analysis." Interfaith Community Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 703 n.5 (3d Cir. 2005). The court must ensure that the plaintiff's request does not compensate them for *over-litigation*. Cody v. Hillard, 304 F.3d 767, 773 (8th Cir. 2002).

When Plaintiff's counsels' time records are subjected to the rigorous audit required, one finds that many of the hours the plaintiffs claim in fact were not reasonable and directly incurred in securing the narrow injunction actually issued.

## I. **Market Rate.**

Plaintiff alleges that they should be compensated for the market rate associated with South Florida because that is where the case was filed. Defendant objects to this justification because venue was transferred to the Northern District – because PLN could not describe any convincing reason for the case to proceed in South Florida. (Doc. 46.) Plaintiff cannot essentially "mis-file" a case in the Southern District in order to justify seeking market rates associated with South Florida.

The primary reasons that the case should have been filed in the Northern

District of Florida were as follows: the decisions regarding censorship were made there, the prisons specified in the operative complaint that referenced CCA and GEO were located there (Blackwater CF and Graceville CF) (Doc. 14), all of the witnesses located in Florida were there, and PLN was not a Florida business but was located in Washington and Vermont. (Doc. 46.) After the case was transferred to the Pensacola Division, the Plaintiff essentially conceded that the case should be located in the Tallahassee Division when it filed a motion to transfer the venue to Tallahassee. (Doc. 49, 57.)

"*The general rule* is that the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney''s services is 'the place where the case is filed.'" <u>American Civil Liberties Union of Ga. v. Barnes</u>, 168 F.3d 423, 437 (11th Cir. 1999) (emphasis added) (quoting <u>Cullens v. Georgia Dep't of Transp.</u>, 29 F.3d 1489, 1494 (11th Cir.1994)). Yet there are situations where this general rule does not apply, such as where a case could be filed in one district but should have been filed in the other district because there are competent local counsel that a client would prefer to compensate that those rates. As explained by the Second Circuit:

> We now clarify that a district court may use an out-of-district hourly rate – or some rate in between the out-of-district rate sought and the rates charged by local attorneys – in calculating the presumptively reasonable fee if it is clear that a reasonable, paying client would have paid those higher rates. We presume, however, that a reasonable, paying client would in most cases hire counsel from within his

12

district, or at least counsel whose rates are consistent with those charged locally. This presumption may be rebutted – albeit only in the unusual case – if the party wishing the district court to use a higher rate demonstrates that his or her retention of an out-of-district attorney was reasonable under the circumstances as they would be reckoned by a client paying the attorney's bill.

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections, 522 F.3d 182, 191 (2d Cir. 2007).  Here, this case does not involve complicated issues, is relatively straightforward, and is regularly tried by attorneys in the Northern District of Florida.  (Def. Ex. A.)

Regarding billing statements, the general subject matter must be set out with sufficient particularity, so the time claimed for each activity can be accessed. Norman, 836 F.2d at 1303.  "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Id. at 1299.  The court itself is "'an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.'"  Norman, 836 F.2d at 1303 (quoting Campbell v. Green, 112 F.2d 143, 144 (5th Cir. 1940)).

Defendant has had their expert, J. Steven Carter, review the billing and rates sought by the Plaintiff, and provide an opinion.  (Def. Ex. A.)  Based on the level of experience, the reasonable and appropriate hourly rates for Plaintiff's counsel,

paralegals, and law clerks should be as follows:

A.      $225-250 per hour for attorneys with 1-3 years of experience which would include FJI attorneys Stephanie Moore Throckmorton, Erica Selig, and Chelsea Lewis; and the HRDC attorneys Alissa Hull, Robert Jack, Masimba Mutamba, and Monique Roberts.

B.      $250-275 per hour for attorneys with 5-10 years of experience which would include FJI attorneys Dante Trevisani, Shawn Heller, and Joshua Glickman; and the HRDC attorney Saberish Neelakanta.

C.      $325-350 per hour for attorneys with 11-15 years of experience which would include HRDC attorneys Daniel Marshall; and ACLU attorney Benjamin Stevenson.

D.      $400-425 per hour for HRDC attorney Lance Weber with 18 years of experience.

E.      $400-425 per hour for Bancroft attorney Michael McGinley.[3]

F.      $550-575 per hour for ACLU attorney Randy Marshall with 33 years of experience.

G.      $600-625 per hour for FJI attorney Randy Berg with 37 years of experience.

H.      $625-650 per hour for Bancroft attorney Paul Clement.[2]

I.      $75-100 per hour for the paralegals and law clerks used by FJI and HRDC.

---

[3] It is apparent from the recruiting of Attorneys McGinley and Clement that they were used because of the importance of the First Amendment claim, and not due to the due process claim. Defendant further objects to their appearance in this case because, as an example, entry level attorneys at the Office of the Attorney General handle due process claims, not attorneys of their caliber.

(Def. Ex. A.)   As such, based on the foregoing, Defendant objects to the rates sought by the Plaintiff, and argues that the market rates should be *no more* than as stated herein.

## B.   The Claims in this Case are *Not* Intertwined.

The Plaintiff has represented that both the First Amendment and due process claims are so significantly intertwined that this prevents it from separating the claims on its billing, and even goes as far as citing a case that predates Hensley for the proposition that, "[t]he theory that fee applications should be dissected into 'winning' and 'losing' hours with the latter being nonreimbursable contradicts the law of this circuit," citing   Dowdell v. City of Apopka, Florida, 698 F.2d 1181, 1187 (11th Cir. 1983) (Doc. 329 at 22).   However, this proposition from Dowdell is based on Jones v. Diamond, 636 F.2d 1364, 1382 (5th Cir. 1981) (en banc).   The Supreme Court's decision in Hensley was issued in 1983, and specifically provides for such *dissecting* of non-intertwined claims.

In the instant case, the First Amendment and Due Process claims pertain to separate facts and legal elements.   The First Amendment claim is governed by the deferential standard established in Turner v. Safley, 482 U.S. 78, 107 S. Ct. 2254 (1987).   PLN, 890 F.3d at 964.   The impoundments of the magazines must be content neutral and reasonably related to legitimate penological interests.   Id. at

967.  Another <u>Turner</u> factor is "the impact [that] accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally."  Id. at 973.  The last <u>Turner</u> factor is whether the defendant's response is an exaggerated response to prison concerns.  Id. at 974-975.  In contrast, a due process claim requires that a party receive notice and an opportunity to be heard.  <u>Id.</u> at 976-77.

The facts and legal analysis pertaining to the First Amendment and Due Process claims are separate and distinct.   <u>See, e.g.</u>, <u>N.A.A.C.P. v. City of Evergreen, Ala.</u>, 812 F.2d 1332, 1333-34 (11th Cir. 1987) (failure to advertise claim and discrimination claim not intertwined); <u>Jackson v. Ill. Prisoner Review Bd.</u>, 856 F.2d 890, 894 (7th  Cir. 1988) (Due process and ex post facto claims not intertwined because they are based on different facts (composition of Board vs. withholding of evidence) and legal theories (due process vs. ex post facto ), and seek different relief for different courses of conduct by the same defendant); <u>Sisco v. J.S. Alberici Const. Co.</u>, 733 F.2d 55, 59 (8th Cir. 1984) (affirmative-action and retaliation claims not intertwined because the legal basis of the claims is distinct, the affirmative-action claim was most based on an affirmative-action plan and the way it was carried out, while the retaliation claim was primarily based on the motive for termination and not rehiring); <u>Zakrzeski v. Ala. State Councel on Arts</u>

and Humanities, no. 8-T-512-N, 1986 WL 15152, at *2 (M.D.Ala. Apr. 28, 1986) (while defamation and liberty interest claims initially arose from same operative facts, from that point forward the defamation claim was based on separate and distinct evidence, so the claims were not intertwined).   This conclusion is sufficiently supported by the Court's and the Eleventh Circuit's separate analysis of the two claims in their respective decisions.  See generally  PLN, 890 F.3d 954 (11th Cir. 2018).  (See generally Doc. 279.)

On the other hand, for example, facts and legal analysis associated with the claims of excessive force and battery under Florida law would be intertwined. Campbell v. Sikes, 169 F.3d 1353, 1375 (11th Cir. 1999); City of Miami v. Sanders, 672 So. 2d 46 (Fla. 3d DCA 1996) (defining elements of battery, citing Restatement of Torts); see, e.g., Goldsmith v. Badby Elevator Co., 513 F.3d 1261, 1292 (11th Cir. 2008) (claims intertwined because evidence of intent, failure to promote, and the EEOC investigation supported both the retaliation and discrimination claims); Popham v. City of Kennesaw, 820 F.2d 1570, 1574, 1576, 1578 (11th Cir. 1987) (Plaintiff prevailed on only the excessive force claim, but the claim was intertwined with the First Amendment, false arrest, battery, and malicious prosecution claims).

### III.   **Objections**.

The Defendant has reviewed the billing statements provided by the Plaintiff, and, after reviewing the 4004 entries, line-by-line, provides specific objections to each of the lines as follows:[4]

### 1.   *Non-FDC Defendant:*

In this case, the Plaintiff is billing for work specifically performed in litigation against CCA and GEO.  On January 29, 2013, the Plaintiff, CCA, and GEO filed a joint stipulation of dismissal due to settlement where they asserted, that they would "bear its own attorneys' fees," which the Court adopted, dismissing CCA/GEO (Docs. 116-118.)   Nevertheless, the Plaintiff now seeks, despite its stipulation, attorneys' fees associated with litigation against CCA/GEO from the FDC, totaling 380.27 hours in the amount of $157,722.34.  (Def. Ex. B.) Defendant objects to this billing, which must be struck in the entirety.

### 2.   *Non-Billable:*

The Plaintiff has also billed the Defendant for its press release work. Preparation of press releases is non-compensable.  <u>Mallory v Harkness</u>, 923 F. Supp. 1546, 1556 (S.D.Fla. 1996).   The time associated with such non-

---

[4]   Defendant concedes that many of the objections overlap, but multiple objections are asserted in an abundance of caution in the event that the Court overrules one or more objections.

compensable tasks totals 5.33 hours, or $2,802.20 for the trial court, and 1.90 hours, or $1,115.00 for appeal (Def. Exs. C-1, C-2), which Defendant objects to in its entirety.

### 3.   _Non-Compensable:_

Administrative tasks such as scanning and copying is not compensable. Potter v. Blue Cross Blue Shield of Michigan, 10 F.Supp. 3d 737, 767 (E.D. Mich. 2014) (noting that courts have not allowed attorney's fees for administrative tasks). In this case, the Plaintiff seek billing associated with such tasks, totaling 27.65 hours in the amount of $6,083.45 for the trial court (Def. Ex. D), which Defendant objects to in the entirety.

### 4.   _Inappropriate Witness Billing:_

Paralegal time is recoverable as "part of a prevailing party's award for attorney's fees and expenses, [but] _only to the extent that the paralegal performs work traditionally done by an attorney._" Jean v. Nelson, 863 F.2d 759, 778 (11th Cir. 1988) (emphasis retained, quoting Allen v. United States Steel Corp., 665 F.2d 689, 697 (5th Cir. Unit B 1982)).   Yet in this case the Plaintiff utilized three paralegals Rachel Stevens, Zach Phillips, and Jeff Antoniewicz not to perform work traditionally done by an attorney, but as witnesses in the litigation.   These three witnesses were used to testify about receipt of the notices from the FDC.   All

19

billing associated with their roles as witness is wholly inappropriate as attorneys'
fees.  For such billing, the Plaintiff seeks a total of totaling 36.70 hours in the
amount of $5872.00 for the trial court (Def. Ex. E), which Defendant objects to in
the entirety.

5.  ***Amicus Billing:***

Here, the Plaintiff seeks billing for significant time working with  Amicus
filers both in the trial court and in the appeal.  While it  "comes as no surprise" that
parties have a hand in writing an amicus brief,  and perhaps "amicus briefs are
often used as a means of evading the page limitations on a party's briefs," this
doesn't mean that amicus briefs should be underwritten by Defendant.   <u>Glassroth</u>
<u>v. Moore</u>, 347 F.3d 916, 919 (11th Cir. 2003). The Eleventh Circuit has stated:
"The district court should not award plaintiffs any attorney's fees or expenses for
work done in connection with supporting amicus briefs."   <u>Id</u>. Specifically, the
Plaintiff seeks fees for meetings, conferences, calls, emailing, reviewing, and
editing Amicus Briefs in the lower court and in the appeal, totaling 14.47 hours in
the amount of $6,882.20 for the trial court and 27.62 hours in the amount of
$16,231.78 for the appeal (Def. Exs. F-1, F-2), which Defendant objects to in the
entirety.

6.    *In-House Counsel*:

PLN in this case utilized attorneys that they contracted with and in-house attorneys working for the Human Right Defense Center ("HRDC"), which owns PLN.  While there were certain tasks that HRDC attorneys performed to advance the litigation (such as discovery), numerous tasks were duplicative, or consisted of reviewing filings and conferring about the case that would be non-compensable client tasks, not legitimate attorney billable tasks.

"There is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." Norman, 836 F.2d at 1302; see Kay v. Ehrler, 499 U.S. 432, 111 S. Ct. 1435 (1991) (affirming the decision to deny attorney's fees for a lawyer who represented himself because the "overriding statutory concern [of 42 U.S.C. § 1988] is the interest in obtaining independent counsel for victims of civil rights violations"); see, e.g., Prison Legal News v. Stolle, 129 F. Supp. 3d 390 (E.D.Va. 2015) (in-house counsel for PLN had attorneys' fees reduced, among other reasons, because  in-house counsel was merely acting as a liaison or corporate contact or representative that did not advance the litigation).  Fees may be recovered under 42 U.S.C. § 1988, as long as the attorney's work "was both useful

and of a type ordinarily necessary to advance the civil rights litigation." <u>Webb v. Board of Educ. of Dyer County, Tenn.</u>, 471 U.S. 234, 243, 105 S. Ct. 1923, 1928 (1985).

Where more than one attorney represents a client, redundant hours generally occur, and the court should carefully scrutinize the number of lawyers present and the roles assumed by each, and deduct for duplication. <u>Norman</u>, 836 F.2d at 1301-02; <u>In re Donovan</u>, 887 F.2d 982, 996 (D.C. Cir. 1989) (time billed for intra-firm meeting and telephone conferences was duplicative). "The problem of duplication of hours is frequently encountered in cases of multiple representation because too many attorneys (all billing their time) are present at meetings, hearings and depositions…" <u>Jane L. v. Bangerter</u>, 828 F. Supp. 1544, 1549 (D. Utah 1993), reversed on other grounds, 61 F.3d 1505 (10th Cir. 1995).[5] Duplication inevitably occurs when plaintiffs' lawyers hold conferences, call each other on the phone, write each other letters and memoranda, or when several plaintiffs' lawyers bill for reading the same document received from the defendants or the court. <u>See Sklar v.</u>

---

[5] In <u>Jane L. v. Bangerter</u>, the court found that an "enormous amount of time … was spent discussing the case with each other on the telephone or in meetings." 828 F. Supp. at 1550. Almost half of the fee requests involved telephone or office conferences. <u>Id.</u> The court made significant reductions in plaintiffs' fee petitions where four attorneys attended one hearing and seven attorneys attended another and they failed to eliminate the duplicative time from their records. <u>Id.</u> Because

Clough, No. 1:06-CV-0627-JOF, 2008 WL 5381961, at *2 (N.D.Ga. Dec. 23, 2008).

Here, the Plaintiff stacked several lawyers on this case for tasks that did not advance the litigation, such as reviewing/conferring, and even attending depositions that only one attorney conducted.  Plaintiff claimed attorney time totaling 449.75 hours, and fees totaling $179,723.73 for duplicative time in the trial court and 129.27 such hours and $59,079.78 in attorney's fees for the appeal (Def. Exs. G-1, G-2), to which Defendant objects in the entirety.

**7.**   ***No Showing of Necessity:***

Plaintiff's also provided billing statements that, when analyzed with the procedural posture of the case at the time of the billing (and given the lack of an adequate description of the work performed), do not show that the time claimed was necessary to advance the litigation.  In this case, Plaintiff claims 27.63 hours (and a total of $7,609.73) for what appears to be unnecessary time in the trial court and 3.42 hours (and $1,541.22) for the appeal (Def. Exs. H-1, H-2), to which Defendant objects in the entirety.

---

the court considered such time to be unnecessary, it reduced the requested hours

8. ***Billing from Another Case:***

And, Plaintiff seeks to claim time associated with work on another case in the instant matter.  Plaintiff sought billing from client Bauer, for filing a new case on vagueness, a conference on a potential new suit, and sending a diabetes manual. (Def. Ex. I.)  This billing totals 0.95 hours in the amount of $407.25 for the trial court (<u>id.</u>), to which Defendant objects in the entirety.

9. ***Block Billing:***

Additionally, Plaintiff has engaged in the practice of block billing, which prevents the Court and Defendants from determining whether the claimed time was reasonable and necessary and the extent to which the time was actually expended on claims against Defendant (as opposed to claims against co-defendants who settled all of their claims previously).

"Block billing" is the practice of "lumping together multiple tasks into a single entry of time," <u>Cardena v. The Pacesetter Corp.</u>, 224 F.3d 1203, 1214 (10th Cir. 2000), "without separating the tasks into individual blocks or elaborating on the amount of time each task took," <u>Capone v. Aetna Life Insurance Co</u>, no. 1:06-CV-3014-MHS, 2010 WL 6029242, at *5 (N.D.Ga. Dec. 22, 2010). This court, among many others, has found that block billing presents a significant problem

accordingly. <u>Id.</u>

because it makes an attorney's time records "unnecessarily difficult" to review. Kearney v Auto-Owners Inc., 713 F. Supp. 2d 1369, 1377 (M.D.Fla. 2010). For instance, block billing renders impossible the court's ability to identify work done on distinct claims or determine the reasonableness of the amount of time spent on particular tasks. Id. at 1377- 1378 ("block billing entries make it difficult for the Court to know what work was done, when and for how long"); see also Role Models America Inc. v. Brownlee, 353 F.3d 962 (D.C. Cir. 2004); E.S. v. Katonah-Lewisboro School District, 796 F. Supp. 2d 421, 432-33 (S.D.N.Y. 2011); Merrick v. Scott, no. 3:10-CV-2172-D, 2011 WL 1938188, at *3 (S.D.Tex. May 20, 2011); Malchado v. Da Vittorio, no.09-23069-CIV, 2010 WL 2949618, at *3 (S.D.Fla. July 26, 2010). Regarding the block billed tasks, the Plaintiff claimed time totaling 67.06 hours (and fees in the amount of $28,845.80) in block billed time for the trial court and 1.00 hour (or $613.00 for the appeal (Def. Exs. J-1, J-2), to which Defendant object in the entirety.

## 10.    _Insufficient Detail_:

The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates. Barnes, 168 F.3d at 427. Attorneys are required to "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." Hensley, 461 U.S. at 437.

Time sheets must be sufficiently detailed to allow the court to assess whether hours were reasonably expended and necessary. Id. at 433; Mannings v. School Board of Hillsborough County, 851 F. Supp. 436, 443, 444 (M.D.Fla. 1994); In re Donavan, 877 F.2d 982, 994 (D.C. Cir. 1989). Fee applicants must provide "fairly definite information" concerning activities performed by each attorney. See Mallory, 923 F.Supp. at 1556 (quoting FMC Corp. v. Varonos, 892 F.2d 1308, 1317 (7th Cir.1990)).

Where hours are not documented sufficiently, awards may be reduced by the district court accordingly. Hensley, 461 U.S. at 433; Mannings, 851 F. Supp. 436; Von Clark v. Butler, 916 F.2d 255, 259 n.6 (5th Cir. 1990) (reduction of time was appropriate where the records simply listed "telephone call," "trial preparation," or "travel to Beaumont to attend deposition" without further explanation); Franklin v. Hartford Life Insurance Co., no. 8:07-cv-1400-T-23MAP, 2010 WL 916682, at *3-4 (M.D.Fla. 2010) ( reduction because of insufficiently detailed time entries, such as "meetings," "conference," "review," and "research").

Here, the Plaintiff has billing with insufficient detail, totaling 411.91 hours in the amount of $160,544.39 for the trial court and 225.90 hours in the amount of $106,241.15 for the appeal (Def. Exs. K-1, K-2), to which Plaintiff objects in the entirety.

11.    *Non-Prevailing Motion*:

The Plaintiff billed for filings associated with the following denied motions/objections: motion for leave to amend (Doc. 119), motion to exclude summary judgment evidence (Doc. 159), objection to Steve Arnold deposition (T1, 292:20), and appellate costs, totaling 93.38 hours in the amount of $32,536.82 for the trial court and 3.70 hours in the amount of $1,462.00 for the appeal (Def. Exs. L-1, L-2), to which Defendant objects in the entirety.

12.    *Non-Prevailing Issue (Trial Court) or Party (Appeal)*:

When the billing was described in enough detail so that it could be associated with PLN's arguments as an appellant, for which they were unsuccessful, it became clear that Plaintiff billed a total of 752.71 hours (or $337,030.56) for non-prevailing issues in the trial court and 359.27 hours (or $169,997.58) for the appeal (Def. Ex. M-1, M-2), to which Defendant objects in the entirety.

13.    *Degree of Success*:

In this case, a review of the order and opinion demonstrate that the Plaintiff had very limited success in this case.  Further, Defendant could argue that the Plaintiff expended most of its effort on the First Amendment claim and minimal effort on the due process claim.  Yet, if the claims were generously reviewed, at

the trial court level, there is an argument that the Plaintiff only prevailed on half of the due process claim, and lost completely on the First Amendment claim, which is only a 25% win in the case.  At the appellate level, the Plaintiff/Appellee/Cross-Appellant only succeeded on anything associated with responding as an Appellee, and lost completely as an Appellant, which is only a 50% win in the appeal.  In lieu of the minimal litigation and appellate success achieved by Plaintiff, Defendant objects to 75% of Plaintiff's claimed fees at the trial level and 50% of Plaintiff's claimed fees in the appeal.   Thus, Defendant objects to 1965.73 hours (or $806,907.00 in fees) for the trial court and 201.87 hours (or $114,485.70) for the appeal.  (Def. Exs. N-1, N-2.)  After the objections and Defendant's market rate is applied, the total recoverable is 428.66 hours for a total fee amount of $116,794.68 for the trial court and 97.60 hours for a total fee amount of $42,757.87 for the appeal.  (Def. Exs. N-1, N-2.)

### 14.   *Excessive*:

For specific tasks, such as working on motions filed on or around the time of the tasks, Defendant added the billing for these tasks and discovered that the Plaintiff billed three times the reasonable amount of time for such tasks, as such, Defendant objects to, at least,[6] 67% of this billing outlined in the table below:

---

[6] Other full objections may override the excessive objection.

| Date | Description | Pages[7] | Hours | Amount |
|---|---|---|---|---|
| - | Pre-filing conferences | - | 80.40 | $37,151.90 |
| 11/17/11 | Compl. (1)[8] | 12 | 35.43 | $18,649.63 |
| 12/16/11 | Am. Compl (14) (only defendants changed) | 17 | 6.58 | $3,644.23 |
| 01/09/12 | Resp. Venue (22) | 8 | 45.34 | $19,062.68 |
| 01/19/12 | Sur-reply Venue/Dismiss (26) | 6 | 7.17 | $3,146.30 |
| 02/27/12 | Resp CCA/GEO Venue (42) | 10 | 16.91 | $6,972.28 |
| 04/12/12 | Motion Venue Tall. (49) | 10 | 11.75 | $5,092.10 |
| 05/16/12 | Resp. GEO MTD (60) | 18 | 16.82 | $6,565.80 |
| 11/05/12 | Resp. CCA/GEO MSJ (85) | 18 | 53.31 | $25,305.63 |
| 11/29/12 | Motion to Compel - FDC (87) | 20 | 30.10 | $10,471.00 |
| 12/12/12 | Motion to Compel - CCA/GEO (89-90) (duplicate) | 18 | 21.67 | $8,090.70 |
| 01/11/13 | Motion to Compel Hearing | - | 12.93 | $6,359.73 |
| 02/01/13 | Motion Leave to Am. (119) | 23 | 20.68 | $9,681.88 |
| 02/04/13 | Resp. 1st MSJ (120) | 26 | 80.55 | $29,168.43 |

---

[7] Unless noted otherwise.

[8] All numbers in parenthesis in this table are CM/ECF document numbers.

| 03/08/13 | MSJ (139) | 35 | 130.88 | $58,369.40 |
|----------|-----------|-----|--------|-----------|
| 02/29/13 | Resp. 2nd MSJ (153) | 27 | 95.75 | $37,567.52 |
| 04/05/13 | Reply - MSJ (154) | 12 | 34.63 | $13,601.05 |
| 10/06/14 | Depositions[9] | 2 hrs., 49 min. | 41.46 | $17,341.50 |
| 10/10/14 | Depositions | 1 hr., 5 min. | 25.47 | $15,252.53 |
| 10/16/14 | Deposition | 1 hr., 10 min. | 6.80 | $4,916.70 |
| 11/06/14 | Exh./Witness List (213-214) | 12 | 40.90 | $14,315.06 |
| 08/20/15 | Motion to Strike (248) | 4 | 7.93 | $2,720.23 |
| - | Confer about appeal & post-trial motions (trial & appeal) | - | 42.97 | $22,336.78 |
| 12/07/15 | Initial/Response Brief (App) | 68 [10] | 217.10 | $101,395.65 |
| 02/16/16 | Reply Brief (App) | 27 [9] | 88.74 | $40,262.75 |
| 06/10/16 | Oral Argument (App) | - | 133.18 | $76,511.55 |
| 02/05/19 | Motion Fees/Costs (310) | 11 | 35.18 | $11,010.70 |
| 03/07/19 | Motion Ext. Fee Amt. (323) | 5 | 4.33 | $1,387.05 |

[9]   The depositions were generally conducted by one attorney, but the Plaintiff billed for multiple attorneys' preparation and sent three or four attorneys to the respective deposition.  Based on the notices of deposition, the October 6th was Paul Wright, Jeff Antoniewicz, and Rachel Stevens; the October 10th was Martha Morrison, Patricia Goodman, Rhonda Smith; and the October 16th was Meg Savage.

[10] The page numbers for the briefs do not includes indices, cover pages, etc.

| 04/12/19 | Motion for Fee Amt. (329) | 31 | 112.45 | $35,107.30 |
|----------|---------------------------|----|--------|-----------|

### 15. *Expenses:*

Defendant objects to expenses that are inappropriate under § 1988 (Def. Ex. P) even though they might be appropriate in the attorney-client relationship, Dowdell, 698 F.2d at 1192. Recoverable expenses must be incidental and necessary to the representation, and reasonable. Evans v. Books-A-Million, 762 F.3d 1288, 1298 (11th Cir. 2014). There also must be receipts provided to show sufficient justification to recover expenses under § 1988. Segovia v. Montgomery County, Tenn., 593 F. App'x 488, 493 (6th Cir. 2014). But costs incurred by third parties who are not attorneys for the case cannot reasonably be considered attorney's fees and are instead governed by 28 U.S.C. § 1920. Segovia, 593 F. App'x at 493; Brown v. Gray, 227 F.3d 1278, 1297 (10th Cir. 2000). Regarding copies, the use or intended use must be shown, Cullens v. Ga. Dep't of Transp., 29 F.3d 1489, 1494 (11th Cir. 1994), and copies for the convenience of counsel is not recoverable, Helms v. Wal–Mart Stores, Inc., 808 F. Supp. 1568, 1570 (N.D.Ga. 1992).

For the depositions, only expenses associated with one attorney was necessary because the depositions were only conducted by one attorney. (Def. Ex. O, lines 1-15.) See § III.6. The depositions should also be described in more

detail.  See § III.10.  Next, the Plaintiff inappropriately bills for the service of dismissed defendants. (Id., lines 56-58.)  Segovia, supra; Brown, supra.  Also, witness costs are not an appropriate expense.  (Id., lines 65, 79, 81, 89, 96, 127.) The description of copies and postage do not provide sufficient detail, whether they are necessary, and whether they are for convenience.  (Id., lines 60-61, 76-77, 125-126, 134-137.)  Cullens, supra; Helms, supra.  In addition, PLN inappropriately seeks the costs for the briefing/appendix when the Eleventh Circuit denied the parties' motions on September 19, 2018, stating, "each party is ordered to bear its own costs." (Id., lines 135-137.)  Lastly, while Defendant disagrees with the necessity of recruiting Clement and McGinley for only prevailing on due process, only McGinley (who was the author of the briefs) and Clement (the attorney who conducted the oral argument) were necessary at the oral argument, and all other attorneys' presence is objectionable. (Def. Ex. O, lines 129-134, 139-147.)  See § III.6.

Here, PLN seeks $39,976.38 in expenses, but, after the objections are applied, Defendant argues that only $2,345.95 in expenses is recoverable if and only if receipts are provided; otherwise, no expenses are recoverable.

**D.      Conclusion.**

After all the objections are applied, the total remaining hours for each stage of the case is below.  In the second column, the total remaining hours are based purely on objections.  (Def. Exs. P-1, P-2.)  In the third column, the total remaining hours are based on the objections and what is reasonable as stated by Defendant's expert.  (Def. Ex. A.)

| STAGE | TOTAL Remaining Hours Objections Only | TOTAL Remaining  Hours from Def's Expert |
|---|---|---|
| Case Development | 7.41 | 17.65 |
| Pre-Suit Litigation | 5.60 | 5.60 |
| Pleadings | 4.45 | 28.08 |
| Case Management & Meetings | 11.11 | 10.80 |
| Motion Practice & Legal Research | 111.48 | 216.66 |
| Post Filing Investigation | 9.62 | 9.60 |
| Discovery | 118.57 | 202.22 |
| Hearing | 2.27 | 2.40 |
| Mediation & Settlement | 0.68 | 0.33 |
| Trial | 136.94 | 195.15 |
| Post-Trial Briefing | 45.26 | 49.28 |
| Appeal | 120.44 | 219.48 |
| Attorneys' Fees & Costs | 101.60 | 102.29 |

| TOTAL | 675.44 | 1059.64 |
|-------|--------|---------|

In sum, the range that should be awarded based purely on objections to the maximum amount that is reasonable is $203,695.81 to $344,347.00 (low end market rate) and $370,858.00 (high end market rate). (Def. Exs. A, P-1, P-2.)

**WHEREFORE**, for the foregoing reasons and those discussed in Doc. 321, Defendant Inch, respectfully requests the Court to issue an order that substantially reduces fee award sought in "Plaintiff's Motion to Determine the Amount of Attorneys' Fees and Expenses" (Docs. 329) in accordance to the objections raised in this response and for the fee award to be within the range specified in this response.

Respectfully submitted,
**ASHLEY MOODY**
**ATTORNEY GENERAL**

/s/ Marcus O. Graper
MARCUS O. GRAPER
Chief Assistant Attorney General
Corrections Litigation Bureau
Florida Bar No. 0044049

/s/ Kristen J. Lonergan
KRISTEN J. LONERGAN
Assistant Attorney General
Florida Bar No.:  125556

Office of the Attorney General
The Capitol, PL-01
Tallahassee, Florida 32399-1050
Telephone: (850) 414-3300
Facsimile: (850) 488-4872
marcus.graper@myfloridalegal.com
kristen.lonergan@myfloridalegal.com

## <u>CERTIFICATE OF WORD COUNT</u>

**I hereby certify** that, in accordance with Northern District of Florida local rule 7.1(F), the total word count for this response and memorandum is less than 7500 words.

<u>/s/ Marcus O. Graper</u>
MARCUS O. GRAPER

## <u>CERTIFICATE OF SERVICE</u>

**I hereby certify** that the foregoing *Defendant's Response to Plaintiff's Motion to Determine Amount of Attorneys' Fees and Expenses* has been filed electronically via this Court's CM/ECF system and served via the same on all counsel or parties of record on this <u>8th</u> day of August, 2019.

<u>/s/ Marcus O. Graper</u>
MARCUS O. GRAPER

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

**PRISON LEGAL NEWS,**

    Plaintiff,

**v.**                                                                 **Case No.: 4:12cv239-MW/CAS**

**MARK S. INCH, in his official**
**Capacity as Secretary of the**
**Florida Department of Corrections,**

    Defendant.

_____/

## INDEX TO APPENDIX

Exhibit A    Declaration of J. Steven Carter

Exhibit B    Table for Non-FDC Defendant Objection

Exhibit C    Table for Non-Billable Objection
              C-1: Trial Court
              C-2: Appellate Court

Exhibit D    Table for Non-Compensable Objection

Exhibit E    Table for Inappropriate Billing for Witness Objection

Exhibit F    Table for Amicus Objection
              F-1: Trial Court
              F-2: Appellate Court

Exhibit G    Table for In-House Counsel Objection
             G-1: Trial Court
             G-2: Appellate Court


Exhibit H    Table for No Showing of Necessity Objection
             H-1: Trial Court
             H-2: Appellate Court


Exhibit I    Table for Billing from Another Case Objection


Exhibit J    Table for Block Billing Objection
             J-1: Trial Court
             J-2: Appellate Court


Exhibit K    Table for Insufficient Detail Objection
             K-1: Trial Court
             K-2: Appellate Court


Exhibit L    Table for Non-Prevailing Motion Objection
             L-1: Trial Court
             L-2: Appellate Court


Exhibit M    Table for Non-Prevailing Issue/Party Objection
             M-1: Trial Court (Issue)
             M-2: Appellate Court (Party)


Exhibit N    Table for Degree of Success Objection
             N-1: Trial Court
             N-2: Appellate Court


Exhibit O    Table for Expenses Objections


Exhibit P    Overall Table of Objections with Totals by Stage of the Case
             P-1: Trial Court
             P-2: Appellate Court