# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**PRISON LEGAL NEWS,**

     *Plaintiff,*

**v.**                      **CASE NO. 4:12cv239-MW/CAS**

**MARK S. INCH, in his official
capacity as Secretary of the
Florida Department of
Corrections,**

     *Defendant.*

_____/

## ORDER ON PLAINTIFF'S MOTION TO DETERMINE THE AMOUNT OF ATTORNEYS' FEES AND EXPENSES

This Court previously determined Plaintiff is entitled to fees under 42 U.S.C.

§ 1988 as the prevailing party in this case. ECF No. 322. Plaintiff now moves for a

determination of the amount of attorneys' fees and expenses to which it is entitled.

ECF No. 329. Plaintiff seeks a total award of $1,244,753.41 in fees and $33,623.57

in expenses. ECF No. 356 at 26.[1] This Court has considered, without hearing,

Plaintiff's motion, ECF No. 329, Defendant's response, ECF No. 338, and Plaintiff's

reply, ECF No. 356, as well as all related exhibits. For the reasons set out below, it

---

[1] Plaintiff arrived at these figures after imposing a 25% across-the-board reduction to its fees for proceedings before this Court and a 50% across-the-board reduction to its fees for the appeal. *See* ECF No. 329 at 27–28; ECF No. 356 at 25.

is **ORDERED** that Plaintiff's motion, ECF No. 329, is **GRANTED IN PART** and Plaintiff is awarded **$1,148,210.89** in attorneys' fees and **$33,448.57** in expenses.

## I

Plaintiff initiated this lawsuit on November 17, 2011 in the Southern District of Florida. ECF No. 1. Plaintiff alleged the Florida Department of Corrections ("FDC") censored its publication, *Prison Legal News*, because the magazine contained advertisements for certain services. Plaintiff also alleged that FDC failed to notify Plaintiff of each impoundment of the magazine. Plaintiff asserted a First Amendment claim based on the censorship and a Due Process claim for the failure to provide notice or an opportunity to appeal the censorship decision. Plaintiff subsequently filed an amended complaint. ECF No. 14.

Defendant moved to transfer venue to the Northern District of Florida, Tallahassee Division pursuant to 28 U.S.C. § 1404(a). ECF No. 18. When that motion was granted, the case was then mistakenly assigned to the Pensacola Division. *See* ECF No. 57 at 3. The case was then transferred to the Tallahassee Division. ECF No. 57.

The parties zealously litigated this case at every stage before this Court, culminating in a four-day bench trial in January 2015. ECF Nos. 235–37. After post-trial briefing, this Court issued an order on Plaintiff's claims in August 2015, ECF No. 251, followed by an amended order on October 5, 2015. ECF No. 279. This

Court ruled against Plaintiff on its First Amendment Claim but ruled in Plaintiff's favor on the Due Process claim. *Id.*

Defendant appealed this Court's judgment that Defendant violated Plaintiff's Due Process rights and Plaintiff cross-appealed this Court's judgment that Defendant did not violate Plaintiff's First Amendment rights. The Eleventh Circuit affirmed in all respects. *Prison Legal News v. Sec'y, Fla. Dep't of Corr.*, 890 F.3d 954 (11th Cir. 2018). The Supreme Court denied review. ECF No. 314.

Plaintiff moved for attorneys' fees under 42 U.S.C. § 1988 and costs under Federal Rule of Civil Procedure 54(d)(1). ECF No. 310. This Court determined that Plaintiff is a prevailing party within the meaning of Section 1988 because Plaintiff succeeded on its Due Process claim and was therefore entitled to fees under Section 1988 and costs under Rule 54(d)(1). ECF No. 322. The parties were ordered to brief the issue of the amount of fees this Court should award. ECF No. 322.[2]

## II

This Court will first address the appropriate amount of attorneys' fees to be awarded to Plaintiff. The Eleventh Circuit has adopted the lodestar method to determine the reasonableness of an award of attorneys' fees. *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). To determine a

---

[2] After subsequently considering Defendant's objections and Plaintiff's response to those objections, ECF No. 325, this Court determined that Plaintiff is entitled to $6,204.42 in costs under Rule 54(d)(1). ECF No. 326.

lodestar amount, a court must ascertain a reasonable hourly rate and multiply it by the number of hours an attorney reasonably expended on the litigation. *Id.* Where the time or fees claimed seem excessive, or there is a lack of support for the fees claimed, "the court may make the award on its own experience." *Id.* at 1303. The burden of establishing that the fee request is reasonable rests with the fee applicant, who must "submit evidence regarding the number of hours expended and the hourly rate claimed." *U.S. ex rel. Educ. Career Dev., Inc. v. Cent. Fla. Reg'l Workforce Dev. Bd., Inc.*, No. 6:04-CV-93, 2007 WL 1601747, at *3 (M.D. Fla. June 1, 2007). Evidence in support of the fee applicant's request requires "sufficient particularity so that the district court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303.

This Court begins with an analysis of the hourly rate sought by Plaintiff's attorneys. This Court then considered whether Plaintiff's submissions demonstrate that the number of hours claimed are reasonable. Finally, this Court considers whether the results in the case warrant adjustment of the lodestar figure.

A. Reasonable Hourly Rates

A "reasonable hourly rate" is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Maner v. Linkan LLC*, 602 F. App'x 489, 493 (11th Cir. 2015) (unpublished) (quoting *Norman v. Hous. Auth. of City of Montgomery*, 836

F.2d 1292, 1299 (11th Cir. 1988)). "The party seeking attorney's fees bears the burden of establishing that the requested hourly rate is in line with prevailing market rates." *Id.* In establishing a reasonable hourly rate, the court may "rely on its own expertise and where appropriate" and may also consider certain case-specific factors.[3] *Id.*

The parties disagree over which legal market—Tallahassee or Miami—is the relevant legal market for purposes of this analysis.

Plaintiff argues that it should be compensated for the market rate associated with Miami because that is where the case was originally filed, and venue was transferred for the convenience of the parties and witnesses (not because venue was improper). Defendant argues that Tallahassee is the appropriate market because venue was transferred to the Northern District and Plaintiff could have hired competent local attorneys.

"The general rule is that the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is 'the place where the case is filed.' " *ACLU of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999) (quoting *Cullens*

---

[3] "These factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Maner*, 602 F. App'x at 492 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974)).

5

*v. Ga. Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994)). In *Cullens*, the case was transferred from Macon, Georgia, to Atlanta. *Cullens*, 29 F.3d at 1494. The plaintiffs prevailed on certain claims and sought an award of attorneys' fees. *Id.* at 1490. The plaintiffs contended the district court erred in using Macon (rather than Atlanta) as the relevant market for the hourly rate to be used in computation of the lodestar figure. *Id.* at 1494. The Eleventh Circuit held that the proper attorneys' fees market was Macon—where the case was initially filed—and not Atlanta. *Id.*

In *Tiara Condo. Ass'n, Inc. v. Marsh USA, Inc.*, 697 F. Supp. 2d 1349 (S.D. Fla. 2010), the case was filed in the Southern District of New York but was transferred to the Southern District of Florida five months later upon the parties' stipulation. *Tiara Condo, Ass'n, Inc.*, 697 F. Supp. 2d at 1356 n.2, 1362 (adopting Magistrate's Report and Recommendation). The defendant made an offer of judgment, which the plaintiff rejected. *Id.* at 1352. The court subsequently granted the defendant's motion to dismiss, and the defendant sought attorneys' fees. *Id.* The magistrate judge recommended an award of attorneys' fees based upon New York market rates, and the defendant objected. *Id.* at 1353. The district court, citing *ACLU of Ga.*, agreed with the magistrate judge's finding and held that New York rates properly applied because the case was originally filed in New York. *Id.*

This Court concludes Miami is the relevant legal market for purposes of determining the reasonable hourly rate for Plaintiff's attorneys. The caselaw

distinguishes between cases where, as here, the case is transferred for the convenience of the parties and witnesses under § 1404(a), and cases where the case is transferred because of improper venue pursuant to § 1406(a). *See Polk v. New York State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983). Where the case is transferred pursuant to § 1404(a), counsel is entitled to fees at the rate prevailing in his home district, "at least in the absence of any indication that the suit was filed in the high-rate district with little prospect of litigation there but in the hope of securing a high fee." *Id.* In contrast, if a suit is transferred because of improper venue, the rates prevailing in the forum district should normally apply to avoid attorneys having "an incentive to file in a high-rate district in the hope of obtaining a high fee, even though the case must be litigated elsewhere." *Id.*; *accord Strickland v. Truckers Express, Inc.*, No. CV 95-62-M-JCL, 2007 WL 496368, at *7–8 (D. Mont. Feb. 12, 2007) (applying market rate in Birmingham, Alabama after case was transferred to Montana on the basis of § 1404(a) because "under those circumstances [transfer based on *forum non conveniens*] the Plaintiffs should not be penalized by a reduction" to their counsel's rates). Because this case was transferred for the parties' and witnesses' convenience, *see* ECF No. 46, this Court will utilize the prevailing market rate in Miami in determining the reasonable market rate for Plaintiff's attorneys.

Plaintiff seeks the following hourly rates for its attorneys, law clerks, and paralegals:[4]

| Name | Firm | Years of Legal Experience | Hourly Rate |
|------|------|---------------------------|-------------|
| Paul Clement | Bancroft | 27 | $900 |
| Randall C. Berg, Jr. | FJI | 41 | $825 |
| Randall Marshall | ACLU | 37 | $700 |
| Lance Weber | HRDC | 22 | $560 |
| Benjamin Stevenson | ACLU | 17 | $525 |
| Michael McGinley | Bancroft | 10 | $500 |
| Dan Marshall | HRDC | 17 | $475 |
| Sabarish Neelakanta | HRDC | 13 | $425 |
| Joshua Glickman | FJI | 12 | $400 |
| Shawn Heller | FJI | 12 | $400 |
| Dante P. Trevisani | FJI | 10 | $350 |
| Alissa Hull | HRDC | 9 | $335 |
| Robert Jack | HRDC | 9 | $335 |
| Monique Roberts | HRDC | 7 | $295 |
| Masimba Mutamba | HRDC | 7 | $295 |
| Stephanie Moore Throckmorton | FJI | 7 | $280 |
| Erica Selig | FJI | 7 | $280 |
| Chelsea Lewis | FJI | 5 | $250 |
| Law Clerks | | | $175 |
| Paralegals | | | $160 |

Plaintiff submitted an affidavit from its attorneys' fee expert, William K. Hill. ECF No. 329-1. Mr. Hill's affidavit attaches each attorney's resume and opines that,

---

[4] This chart is copied from Plaintiff's motion. ECF No. 329 at 14.

based on his expertise and review of the resumes and the case, the hourly rates sought by Plaintiff are reasonable.

Defendant's attorneys' fee expert, J. Steven Carter, opines that this case "was not overly complex or complicated and did not appear to be extraordinary or difficult to litigate." ECF No. 338-1 ¶ 12. Based on his review of Plaintiff's attorneys' resumes, the nature of the case, and his expertise, Mr. Carter claims that the rates for Plaintiff's attorneys should be significantly reduced. *See* ECF No. 338-1 ¶ 18.

This Court finds Plaintiff's proposed rates to be reasonable. First, this Court takes into consideration Mr. Clement and Mr. Berg's excellent reputations and abilities in determining a reasonable fee for their legal services. *See Maner*, 602 F. App'x at 492. Second, caselaw from the Southern District of Florida generally supports Plaintiff's proposed rates. *See* Order at 7–8, Spadaro v. City of Miramar, No. 11-CV-61607 (S.D. Fla. Feb. 14, 2014), ECF No. 541 (finding $600/hour was reasonable rate for civil rights attorney with 32 years' experience); *All Web Leads, Inc. v. D'Amico*, No. 18-cv-80571, 2019 WL 2051970, at *2 (S.D. Fla. May 2, 2019) ($525/hour reasonable for co-managing partner; $400/hour reasonable for 7-year associate); *TYR Tactical, LLC v. Productive Prod. Enter., LLC*, No. 15-CIV-61741, 2018 WL 3110799, at *8–10 (S.D. Fla. April 11, 2018) (in breach of contract case determined at summary judgment, finding $500/hour for senior partners, $450–375/hour for junior partners, $275–225 for associates, and $150 for paralegals to be

reasonable rates); *Carruthers v. Israel*, 274 F. Supp. 3d 1345, 1354 (S.D. Fla. 2017) ($160/hour reasonable rate for law clerks in civil rights case). Third, based on this Court's own knowledge and experience of the hourly rates charged by attorneys throughout the state of Florida, the hourly rates sought by Plaintiff are reasonable.[5] *See Norman*, 836 F.2d at 1303 ("The court . . . is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees . . . .") (quoting *Campbell v. Green*, 112 F.2d 143 (5th Cir. 1940)). Finally, this Court finds Plaintiff's expert's opinion that these hourly rates are reasonable to be credible and persuasive.[6]

## B. Numbers of Hours Reasonably Expended

The next step in the computation of the lodestar is a determination of reasonable hours expended on the litigation. A fee applicant must set out the general

---

[5] In fact, this Court is aware of numerous attorneys in Tallahassee, where rates are lower, charging hourly rates comparable to those sought by Plaintiff's attorneys.

[6] This Court assigns little weight to Defendant's expert's opinion. For one, it is unclear whether the hourly rates proposed by Mr. Carter are based on the assumption that Tallahassee (rather than Miami) is the relevant legal community. *See* ECF No. 338 at ¶¶ 1, 17 ("I am an attorney practicing in Tallahassee, FL . . . . I am also familiar with awards for attorney's fees in . . . both state and federal courts in this geographic area . . . ."). Moreover, Mr. Carter calculated each attorney's years of legal experience using 2015 based on the date of the bench trial and this Court's subsequent orders from the bench trial. ECF No. 338-1 at 9 n.3. Mr. Carter's opinion therefore erroneously categorizes the hourly rates of many of PLN's counsel below their current level of experience. This is also contrary to the Eleventh Circuit's directive that "the court should take into account the time value of money and the effect of inflation and generally award compensation at current rates rather than historic rates." *Norman*, 836 F.2d at 1302; *accord Anderson v. Surgery Ctr. of Cullman, Inc.*, No. 2:12-cv-00598, 2018 WL 8807149, at *9 (N.D. Ala. Aug. 27, 2018) (finding that a lodestar calculation based on current rates was appropriate).

subject matter of the time expended by the attorney "with sufficient particularity so that the court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303. Excessive, redundant, or otherwise unnecessary hours should be excluded from the amount claimed. *Id.* at 1301. A fee applicant must exercise billing judgment by excluding "excessive, redundant, or otherwise unnecessary [hours]." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Where a fee applicant does not exercise billing judgment, "courts are obligated to do it for them." *ACLU of Ga.*, 168 F.3d at 428. When a request for attorneys' fees is unreasonably high, the court "may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut," but it cannot do both. *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350–51 (11th Cir. 2008).[7] The Eleventh Circuit has "recognized that in cases 'where fee documentation is voluminous,' it will not be feasible to require a court to 'engage in such a precise [hour-by-hour] review.' " *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1311( 11th Cir. 2001) (quoting *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994)) (finding 569.3 hours to be sufficiently voluminous that no hour-by-hour analysis was required). Accordingly, this Court will address each of Defendant's

---

[7] To be clear, this Court may apply both an hour-by-hour reduction in order to calculate the lodestar and an across-the-board reduction <u>after</u> computing the lodestar to account for the results obtained in the litigation.  *See Fiedler v. Anglin's Beach Café, LLC*, No. 15-60989, 2017 WL 1278632, at *3 (S.D. Fla. Apr. 3, 2017) (construing *Bivins*).

specific objections, performing an hour-by-hour analysis where "feasible" and an across-the-board cut where appropriate.

Plaintiff's attorneys expended 4,064.44 hours litigating this case. This total is comprised of 3,414.53 hours associated with proceedings in this Court, 584.71 hours associated with the appeal, and 65.2 hours expended in litigating the appropriate amount of Plaintiff's attorneys' fee award. *See* ECF No. 329-4 (District Court Time Records); ECF No. 329-5 (Eleventh Circuit Time Records); ECF No. 356-2 (hours expended litigating amount of attorneys' fee award). Multiplied by these attorneys' reasonable hourly rates, this yields a lodestar figure of $1,758,253.88, comprising $1,462,534.89[8] for the proceedings before this Court and $295,718.99[9] for the appeal.

Plaintiff argues that the number of hours billed by its attorneys in this matter are reasonable in light of the complexity of the case and considering Defendant's aggressive litigation tactics. Plaintiff represents that its attorneys have avoided engaging in excessive, unnecessary, or duplicative tasks, but nonetheless recognizes that a "small percentage reduction is warranted . . . as a reasonable exercise of billing

---

[8] This sum comprises the $1,441,590.39 reflected at ECF No. 329-4 at 233 and the $20,944.50 reflected at ECF No. 356-1 at 1.

[9] This sum is reflected at ECF No. 329-5 at 27.

judgment." ECF No. 329 at 21. Plaintiff proposes that this percentage reduction be incorporated into the reduction for lack of success on its First Amendment claim. *Id.*

Defendant raises numerous specific objections to certain billing entries submitted by Plaintiff. *See* ECF No. 338 at 18–30. In many instances, multiple objections are asserted for a single line item.[10]

After a careful review of the specific line items to which Defendant raised an objection, this Court will make the following reductions in calculating the lodestar figure.[11]

### i. Litigation Against Other Defendants

Defendant objects to 380.27 hours, totaling $157,722.34 in fees, associated with litigation against other defendants (the "settling defendants") before this Court. ECF No. 338 at 18; *see also* ECF No. 338-2. This Court dismissed the settling defendants after they joined Plaintiff in filing a stipulation of dismissal due to settlement. *See* ECF Nos. 116–18. The joint stipulation provided that Plaintiff and the settling defendants were "to bear [their] own attorneys' fees and costs." ECF No. 116.

---

[10] Defendant "concedes that many of the objections overlap" and explains that this was done "in an abundance of caution in the event that the Court overrules one or more objections." ECF No. 338 at 18 n.4.

[11] Importantly, this Court is not expected to be a "green-eyeshade accountant" seeking to "achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Rather, this Court endeavors "to do rough justice" in calculating the reasonable fee award. *Id.*

Defendant is not required "to compensate a plaintiff for attorney hours devoted to the case against other defendants who settle or who are found not to be liable." *Baughman v. Wilson Freight Forwarding Co.*, 583 F.2d 1208, 1214 (3d Cir. 1978). However, "hours chargeable to the claims against defendants who are found not liable are chargeable to defendants against whom plaintiff prevailed if such hours also were fairly devoted to the prosecution of the claims against the defendants over whom plaintiff prevailed." *Strickland v. Alexander*, No. 1:12-CV-02735, 2016 WL 690894, at *5 (N.D. Ga. Jan. 12, 2016) (quoting *Rode v. Dellarciprete*, 892 F.2d 1177 (3d Cir. 1990)).

As a threshold matter, this Court does not find that the settling defendants' stipulation with Plaintiff precludes Plaintiff from seeking fees it would otherwise be entitled to seek from Defendant. The language of the settlement agreement expresses a clear intention between the settling parties to cover all fees and costs based on the claims between the settling parties. There is no basis for this Court to conclude that the settlement precludes Plaintiff from recovering the fees and costs of pursuing its claims against Defendant.

Second, as discussed in more detail below, *infra* Section I.C., Plaintiff's claims against the settling defendants and Defendant were based on exactly the same facts (i.e., the censorship of Plaintiff's publication and the failure to provide notice that the censorship occurred) and the exact same legal theory (i.e., that the censorship

violated Plaintiff's First Amendment rights and the failure to provide notice violated Plaintiff's Due Process rights). Thus, the hours devoted to litigating against the settling defendants were also "fairly devoted to prosecuting [Plaintiff's] claims against [Defendant]." *See Strickland*, 2016 WL 690894, at *6 (including time expended in litigating against other defendants in calculating plaintiff's fee award). Moreover, as Plaintiff points out in its reply, many of the billing entries to which Defendant objects on this basis involved motions or discovery not solely devoted to the settling defendants. *See* ECF No. 356 at 10–11; *see, e.g.*, ECF No. 338-2 at lines 424, 959, 1010, 1032, 1033, 1282, 1288, 1292, 1293, 1366, 1412, 1451, 1452, 1474, 1516.

To the extent some small number of billing entries can be ascribed solely to the settling defendants, a minimal percentage deduction will be factored into the overall percentage reduction for lack of success, which is described below. *See Loranger*, 10 F.3d at 783 ("[T]he district court need not engage in an hour-by-hour analysis. Rather, once the district court determines how many hours were actually devoted to the conduct of the federal litigation, it may then reduce that figure in gross if a review of the . . . fee request warrants such a reduction.").

### ii.     *Press Release Work*

Defendant objects to Plaintiff's requested fees associated with preparation of press releases totaling 5.43 hours, equaling $2,802.20 in fees for proceedings before

this Court and 1.90 hours, equaling $1,115.00 in fees for the appeal. ECF No. 338 at 18–19; *see* ECF No. 338-3; ECF No. 338-4. Plaintiff argues that because it "is an organization that fights censorship through public education and advocacy, public dissemination of the importance of this case was part and parcel of the litigation." ECF No. 356 at 11.

While preparation of press releases is generally a non-compensable activity, it may be reimbursed in some instances. *Compare Mallory v. Harkness*, 923 F. Supp. 1546, 1556 (S.D. Fla. 1996) (preparation of press releases non-compensable); *Catholic Benefits Ass'n LCA v. Azar*, No. CIV-14-240-R, 2018 WL 3876615, at *7 (W.D. Oka. Aug. 15, 2018) ("Counsel characterizes press work as recruiting potential class members and educating current ones, but he offers no evidence to support that claim; the Court is left to assume that these press releases were purely promotional and therefore non-compensable.") *with United States v. Aisenberg*, 247 F. Supp. 2d 1272, 1315 (M.D. Fla. 2003) ("[P]articularly in cases that generate unusual publicity, press appearances and other efforts directed to public relations (i.e., 'media time') that contribute directly and substantially to the litigation may be reimbursed."), *rev'd in part on other grounds*, 358 F.3d 1327 (11th Cir. 2004).

Plaintiff offers no evidence as to how the press releases contributed "directly and substantially" to the litigation. *Cf. Aisenberg*, 247 F. Supp. 2d at 1315 (media time expended by attorneys was "not only central to the defense's legal strategy but

also necessitated by" the government's prosecution strategy). Plaintiff has failed to meet its burden to prove entitlement to these requested fees, and this Court will therefore deduct $2,802.20 from the lodestar figure for proceedings before this Court and $1,115.00 from the lodestar figure for the appeal.

### iii.    *Administrative/Clerical Tasks*

Defendant objects to 27.65 hours, equaling $6,083.45 in fees, for time expended in the proceedings before this Court associated with administrative and clerical tasks such as "scanning and sorting of censored issues of PLN," "reviewing prisoner correspondence at FDOC facilities re: censorship," and "combining state/FBOP regulations into single pdf file." *See* ECF No. 338 at 19; ECF No. 338-5. Plaintiff responds that the time spent reviewing and responding to letters from inmates about censorship of the magazine is fully compensable as time "conducting factual investigation to gather all relevant details necessary for the litigation." ECF No. 356 at 12 (citing *ACLU of Ga.*, 168 F.3d at 436).

After reviewing these billing entries, this Court concludes that roughly half the time sought by Plaintiff (e.g., "scanning and sorting," combining regulations into a single pdf file, "compil[ing] pleadings from PACER for review") constitute clerical tasks, while the other half (e.g., "reviewing prisoner correspondence at FDOC facilities re: censorship") constitute compensable time for factual

investigation. *See* ECF No. 338-5. Accordingly, this Court will deduct $3,041.73 from the lodestar figure for proceedings before this Court.[12]

### iv. Non-Compensable Paralegal Work

Defendant objects to 36.70 hours, totaling $5,872.00 in fees, for time spent by paralegals preparing to testify as witnesses about receipt of notices from Defendant. *See* ECF No. 338 at 19; ECF No. 338-6. "Fees for paralegal work are recoverable 'to the extent that the paralegal performs work traditionally done by an attorney.'" *Gowen Oil Co., Inc. v. Abraham*, 511 F. App'x 930, 936 (11th Cir. 2013) (unpublished) (quoting *Jean v. Nelson*, 863 F.2d 759, 778 (11th Cir. 1988)). Testifying as a witness at trial is not work traditionally performed by an attorney, and Plaintiff concedes these hours "may not be compensable." ECF No. 356 at 12. Accordingly, this Court will deduct $5,872.00 from the lodestar figure for proceedings before this Court.

### v. Amicus Billing

Defendant objects to 16.98 hours, equaling $9,348.73 in fees for proceedings before this Court and 27.12 hours, equaling $15,951.78 in fees for the appeal for time expended by Plaintiff's counsel supporting amicus briefs.[13] *See* ECF No. 338

---

[12] ($6,083.45 ÷ 2) = $3,041.73

[13] Defendant's brief conflicts with the spreadsheets it has attached with respect to the quantity of hours and fees it objects to on this basis. *Compare* ECF No. 338 at 20 (objecting to 14.47 hours in the amount of $6,882.20 for the trial court and 27.62 hours in the amount of $16,231.78 for the appeal) *with* ECF No. 338-7 at 3 (objecting to 16.98 hours totaling $9,348.73

at 20; ECF No. 338-7; ECF No. 338-8. The Eleventh Circuit has directed that district courts "should not award plaintiffs any attorney's fees or expenses for work done in connection with supporting amicus briefs." *Glassroth v. Moore*, 347 F.3d 916, 919 (11th Cir. 2003). Accordingly, this Court will deduct $9,348.73 from the lodestar figure for proceedings before this Court and $15,951.78 from the lodestar figure for the appeal.

*vi.    Duplicative Billing*

Defendant objects to 579.02 hours, totaling $238,803.51 in fees, for duplicative work performed by Plaintiff's attorneys. *See* ECF No. 338 at 21; ECF No. 338-9; ECF No. 338-10. Defendant argues these billing entries comprise "numerous tasks that were duplicative, or consisted of reviewing filings and conferring about the case that would be non-compensable client tasks, not legitimate attorney billable tasks." ECF No. 338 at 21. Defendant also objects that more than one of Plaintiff's attorneys attended depositions that only one attorney conducted. ECF No. 338 at 23.

This Court's review of Plaintiff's billing entries does not reveal hours that appear to constitute unreasonable duplication of effort. Although there are certain entries reflecting the presence of two attorneys at various depositions, courts have

---

for the trial court); ECF No. 338-8 (objecting to 27.12 hours totaling $15,951.78 for the appeal). This Court will use the amounts included in Defendant's spreadsheets (ECF No. 338-7 and ECF No. 338-8) in calculating the lodestar figure.

found this to be appropriate in civil rights cases. *See Review Publ'ns, Inc. v. Navarro*, No. 89-1187-Civ, 1991 WL 252962, at *7 (S.D. Fla. June 26, 1991) ("Equally unavailing is defendant's contention that the presence of two attorneys at deposition or at trial was unreasonable and plaintiffs should, therefore, not be fully compensated.").

Moreover, the majority of the objected-to billing entries reflect time spent conferring with other attorneys regarding case strategy. This Court finds Magistrate Judge Goodman's reasoning in *Advanced Diabetes Treatment Ctrs., LLC v. Sebelius*, No. 09-61698, 2012 WL 5077155, at *15 (S.D. Fla. Sept. 20, 2012) to be well reasoned and persuasive:

> Moreover, the Undersigned understands that unless a law firm is handling the simplest of cases, it would be naive to believe that attorneys should not brainstorm over strategic decisions. In fact, it could be detrimental to a client's overall litigation position if lawyers operated in intellectual silos and never shared analytic approaches with their colleagues. Thus, multiple attorneys on the same case are not automatically precluded from obtaining fees for strategic conferences between themselves.

Judge Goodman's review of the plaintiff's billing entries revealed a "minimal overlap of effort inevitably occurred between [the plaintiff's law firms]." *Id.* He implemented a 7% across-the-board reduction of hours billed during the eleven months when both firms were involved in the litigation "to offset any duplication of effort and/or billing inefficiencies." *Id.*

Accordingly, this Court will not perform a line-by-line reduction to the fees on the basis of duplication of effort and/or billing inefficiencies. To the extent some small percentage reduction is appropriate to account for a minimal amount of duplicative or inefficient billing, this Court finds that a corresponding reduction can most appropriately be factored into the overall percentage reduction for lack of success, which is described below. *See Loranger*, 10 F.3d at 783.

### vii.    No Showing of Necessity

Defendant objects to 31.05 hours, totaling $9,150.95 in fees, as "unnecessary." *See* ECF No. 338 at 23; ECF No. 338-11; ECF No. 338-12. Defendant offers no specific explanation as to why it considers these billing entries "unnecessary" other than "the procedural posture of the case at the time of the billing." ECF No. 338 at 23. "[A] party opposing a fee application should submit objections and proof that are specific and reasonably precise, and . . . a failure to do so is generally fatal." *Hodges v. School Bd. of Orange Cty., Fla.*, No. 6:11-cv-135, 2014 WL 6455436, at *9 (M.D. Fla. Nov. 13, 2014); *accord In re Home Depot Inc.*, 931 F.3d 1065, 1089 (11th Cir. 2019) ("The level of specificity required by district courts is proportional to the specificity of the fee opponent's objections.").

This Court's review of these billing entries does not reveal any obviously "unnecessary" tasks. Accordingly, no deduction will be made to Plaintiff's lodestar amount based on this objection.

### viii.    Billing from Another Case

Defendant objects to 0.95 hours, totaling $407.25 in fees, for time associated with work on another case. *See* ECF No. 338 at 24; ECF No. 338-13. Plaintiff responds that all but one of these billing entries (for "client Bauer") were part of the instant case. ECF No. 356 at 15; *see* ECF No. 338-13 line 177. Accordingly, this Court will deduct this lone mistaken billing entry, totaling 0.25 hours and $206.25 in fees, from the lodestar figure for the proceedings before this Court.

### ix.    Block Billing

Defendant objects to 68.06 hours, totaling $29,458.80 in fees, for block-billed tasks. *See* ECF No. 338 at 24–25; ECF No. 338-14; ECF No. 338-15. A review of Plaintiff's billing entries reveals only two time entries exceeding four hours: an eleven-hour and twelve-hour day immediately preceding trial. The description of the tasks completed in these two entries (drafting opening statement and direct and cross examination outlines for numerous witnesses) allow this Court to ascertain the services rendered. This Court will not deduct these time entries from Plaintiff's lodestar amount. *See Home Design Servs., Inc. v. Turner Heritage Homes, Inc.*, No. 4:08-cv-355, 2018 WL 4381294, at *6 (N.D. Fla. May 29, 2018) (declining to eliminate requested fees for block-billed time entries occurring in the days immediately before trial because the court was able to ascertain from the billing descriptions in the block entries the services rendered).

This Court also concludes that the remaining billing entries Defendant has objected to as "block billed" are compensable because the entries contain enough detail to enable this Court to ascertain the work performed and because the amount of time expended on the tasks was reasonable. *Cf. Kearney v. Auto-Owners Ins. Co.*, 713 F. Supp. 2d 1369, 1377–78 (M.D. Fla. 2010) (reducing requested attorneys' fees because "block billing" prevented an evaluation of whether or not the attorney spent a reasonable amount of time on a task).

x.    *Insufficient Detail*

Defendant objects to 637.81 hours, totaling $266,785.54 in fees, on the basis that the requested hours are not documented with sufficient detail. *See* ECF No.338 at 25–26; ECF No. 338-16; ECF No. 338-17. "A fee applicant bears the burden of sufficiently describing the tasks for which he or she seeks fees." *Hodges*, 2014 WL 6455436, at *10. This Court's review of the nearly twenty pages of billing entries to which Defendant objects on this basis reveals that the vast majority of the time entries are sufficiently described. *See*, *e.g.*, ECF No. 338-16 at 9, line 2098 ("Draft motion to exclude documents from summary judgment record"). To the extent any reduction is necessary for insufficiently detailed billing entries, a minimal percentage deduction will be factored into the overall percentage reduction for lack of success, which is described below. *See Loranger*, 10 F.3d at 783.

### xi. *Non-Prevailing Motions*

Defendant objects to 97.08 hours, totaling $33,998.82 in fees, for time associated with unsuccessful motions. *See* ECF No. 27 at 27; ECF No. 338-18; ECF No. 338-19. The law in the Eleventh Circuit, however, "is that a prevailing party entitled to attorneys' fees is not to be penalized for failed motions." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 346 F. App'x 403, 403 (11th Cir. 2009) (per curiam) (unpublished) (citing *Columbus Mills, Inc. v. Freeland*, 918 F.2d 1575 (11th Cir. 1990)); *accord Holloway v. City of Orlando*, 6:15-cv-129, 2017 WL 397471, at *5 (M.D. Fla. Jan. 30, 2017) (declining to exclude time for unsuccessful motion because the motion was not "frivolous, vexatious, or made for any other improper purpose"). For these reasons, this Court declines to deduct any amount from the lodestar figure on this basis.

### xii. *"Non-Prevailing Issue" or "Party"*

Defendant objects to 1,111.98 hours, totaling $507,028.14 in fees, expended on "non-prevailing issues in the trial court" and unsuccessful "arguments as appellant." *See* ECF No. 338 at 27; ECF No. 338-20; ECF No. 338-21. As the Eleventh Circuit has explained, however, fee applications should not "be dissected into 'winning' and 'losing' hours with the latter being non-reimbursable . . . ." *Dowdell v. City of Apopka, Fla.*, 698 F.2d 1181, 1191 (11th Cir. 1983). To the extent Defendant's objection here seeks a reduction for lack of success, this will be

addressed by an across-the-board reduction to the lodestar figure, as discussed in detail below.

### xiii.  Excessive Time

Defendant objects to the amount of time expended by Plaintiff's attorneys on twenty-nine tasks, including pleadings, motions, and depositions. *See* ECF No. 338 at 28–31. Defendant has not objected to specific time entries related to these tasks. Rather, it appears as though Defendant aggregated time entries it believed were related to these tasks. Defendant argues that Plaintiff "billed three times the reasonable amount of time" for these tasks and objects to, "at least, 67% of this billing . . . ." ECF No. 338 at 28.

"[A] court may reduce excessive, redundant or otherwise unnecessary hours in the exercise of billing judgment." *Perkins v. Mobile Hous. Bd.*, 847 F.2d 735, 748 (11th Cir. 1988). "Hours reasonably expended" means "billable hours—that is, work that would be paid for by a reasonable client of means seriously intent on vindicating the rights in issue." *Id.* "Sworn testimony that, in fact, it took the time claimed is evidence of considerable weight on the issue of the time required in the usual case and therefore, it must appear that the time claimed is obviously and convincingly excessive under the circumstances." *Id.* In the Eleventh Circuit, "the measure of reasonable hours is determined by the profession's judgment of the time that may be

consciabably billed and not the least time in which it might theoretically have been done." *Norman*, 836 F.2d at 1306.

This Court does not find the hours expended by Plaintiff's attorneys to be obviously and convincingly excessive. Further, Plaintiff has submitted both an expert affidavit opining on the reasonableness of the amount of time expended and declarations from its attorneys testifying that the tasks performed by Plaintiff's attorneys took the time claimed in the billing entries. *See* ECF No. 329-1; ECF No. 329-6. Moreover, the amount of time expended by Plaintiff's attorneys is commensurate with the time expended by Defendant's attorneys.[14] Defendant zealously defended this case; it cannot now in good faith complain of the consequences.[15]

To the extent a minor reduction for excessive billing is appropriate, a minimal percentage deduction will be factored into the overall percentage reduction for lack of success, which is described below. *See Loranger*, 10 F.3d at 783.

## C. Adjustment of Lodestar Due to Results Obtained

"[T]here is a strong presumption that the lodestar is the reasonable sum the attorneys deserve." *Ela v. Destefano*, 869 F.3d 1198, 1203 (11th Cir. 2017) (internal

---

[14] Defendant's attorneys expended 3,032.60 hours litigating this case at both the trial and appellate level. *See* ECF No. 353.

[15] This Court also finds reasonable the fees incurred by Plaintiff's attorneys in litigating the instant motion. *See* ECF No. 356. This was a complicated (and vigorously contested) petition, involving multiple law firms and attorneys spanning many years of litigation.

quotation marks omitted). "If the lodestar is reasonable, a downward adjustment is merited only if the prevailing party was partially successful in its efforts." *Id.* (internal quotation marks omitted). "A district court must determine what counts as partial success on a case-by-case basis." *Id.*

"[I]n complex civil rights litigation involving numerous challenges to institutional practices or conditions," "a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *See Hensley*, 461 U.S. at 436–40. But, "[w]here the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Id.* at 440. "Where all theories derive from a common core of operative facts, the focus should be on the significance of overall results as a function of total reasonable hours." *Norman*, 836 F.2d at 1302.

The parties do not dispute that Plaintiff's fee award should be reduced for lack of success on the First Amendment claim. *See* ECF No. 329 at 22; ECF No. 338 at 27–28. The parties strongly disagree, however, as to the appropriate extent of the reduction.

Plaintiff asserts that a 25% reduction to the fees incurred in proceedings before this Court and a 50% reduction to the fees incurred for the appeal adequately accounts for the exercise of billing judgment and the lack of success on the First

Amendment claim. ECF No. 329 at 26. Plaintiff argues that these figures represent an appropriate reduction because (1) Plaintiff's First Amendment and Due Process claims were factually and legally intertwined and that its counsel's time was therefore devoted to work advancing both claims simultaneously, (2) Plaintiff's success on its Due Process claim was a "significant" vindication of a constitutional right; and (3) Plaintiff's case involved the development of a complicated factual presentation and required tenacious advocacy in the face of vigorous opposition by Defendant. ECF No. 329 at 22–25; ECF No. 356 at 5–7. Plaintiff also correctly notes that the public benefit of vindicating a constitutional right must be considered in awarding attorneys fees under Section 1988.[16] ECF No. 329 at 24.

Defendant counters that, even viewing Plaintiff's claims "generously," Plaintiff only prevailed on half of the Due Process claim, and lost completely on the First Amendment claim, which is only a 25% win in the case at the trial level and a 50% win in the appeal. ECF No. 338 at 27–28. Defendant argues that the facts and legal analysis pertaining to the First Amendment and Due Process claims were

---

[16] *See, e.g.*, *Fox*, 563 U.S. at 833 ("When a plaintiff succeeds in remedying a civil rights violation, we have stated, he serves as a private attorney general, vindicating policy that Congress considered of the highest priority.") (internal quotation marks omitted); *Popham v. City of Kennesaw*, 820 F.2d 1570, 1580 (11th Cir. 1987) ("The affirmation of constitutional principles produces an undoubted public benefit that courts must consider in awarding attorneys' fees under Section 1988."); *Dowdell*, 698 F.2d at 1191 ("While it is the litigant who has the grievance, it is the litigator who is the 'private attorney' furthering the 'general' interest. Attorneys' fees and expenses are awarded . . . to *reward* attorneys whose service has benefited the public interest.").

separate and distinct. *See* ECF No. 338 at 16–17. Defendant also posits that the relatively limited discussion of Plaintiff's Due Process claim in this Court's order, ECF No. 279 (12 pages out of 66 total), in oral argument before the Eleventh Circuit (1 minute out of approximately 18.5 minutes total), and in the Eleventh Circuit's opinion (2 pages out of 19 pages total) indicates that Plaintiff's success on its Due Process claim was insubstantial and involved "minimal effort" relative to the First Amendment claim. *See* ECF No. 338 at 6, 27.

This Court finds, and the parties agree, that a 50% reduction for time spent on the appeal is appropriate to reflect Plaintiff's lack of success on its First Amendment claim. *Compare* ECF No. 329 at 26 ("PLN proposes . . . a 50% reduction to the fees incurred for the appeal.") *with* ECF No. 338 at 28 ("Defendant objects to . . . 50% of Plaintiff's claimed fees in the appeal."). Accordingly, Plaintiff's lodestar figure for the appeal will be reduced by 50%.

This Court concludes that a 25% reduction to Plaintiff's fees incurred in the proceedings before this Court adequately accounts for Plaintiff's lack of success on its First Amendment claim while still recognizing the importance of Plaintiff's success on its Due Process claim. The 25% reduction is appropriate for two reasons.

First, Plaintiff's First Amendment and Due Process claims arose from the same operative nucleus of facts and legal theories. This litigation was about the censorship of Plaintiff's publication and Defendant's failure to notify Plaintiff when

that censorship occurred. While Defendant is correct that a different legal standard applies to First Amendment and Due Process claims, *see* ECF No. 338 at 15–16, this is not dispositive. The test is whether most of Plaintiff's attorneys' time was "devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *See Hensley*, 461 U.S. at 435. In such a case, the "lawsuit cannot be viewed as a series of discrete claims." *Id.* at 435. Here, as Plaintiff explains, the evidence for Plaintiff's two claims overlapped because Defendant's claimed reasons for censorship (integral in the determination of whether the censorship violated the First Amendment) were often contained in the notices prepared by Defendant. *See* ECF No. 356 at 5; *accord Corral v. Montgomery Cty.*, 91 F. Supp. 3d 702, 719 (D. Md. 2015) (finding plaintiff's successful First Amendment claim and unsuccessful Due Process claim, based on county prohibiting plaintiff's speech on public sidewalk corner, arose out of the same facts and legal theories); *cf. Dee v. Borough of Dunmore*, 548 F. App'x 58, 64 (3d Cir. 2013) (finding successful Due Process claim and unsuccessful First Amendment claim factually distinct where the Due Process claim stemmed from plaintiff's eight-day suspension from work while Plaintiff's First Amendment claim arose out of the publicity following the suspension, and affirming reduction of plaintiff's attorneys' fee award). Plaintiff's First Amendment claim was therefore not "distinct in all respects" from its Due Process claim. *See Hensley*, 461 U.S. at 437. The two claims

arise out of the same set of facts and legal theories. It is unrealistic to separate what time was spent on the Due Process claim as opposed to the First Amendment claim.

Second, this Court finds that Plaintiff's success on its Due Process claim is significant. "Congress has determined that 'the public as a whole has an interest in the vindication of the rights conferred by the statutes enumerated in § 1988, over and above the value of a civil rights remedy to a particular plaintiff." *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986). This Court finds Plaintiff's success on its Due Process claim imparted a substantial public benefit by having this Court enter an injunction requiring Defendant to comply with its notice provisions. Said otherwise, Plaintiff's victory on its Due Process claim prevented Defendant from continuing to censor without regard to its Due Process obligations under the Fourteenth Amendment. Additionally, as Plaintiff points out in its reply, Defendant's discussion of the number of pages and minutes spent on the Due Process claim, *see* ECF No. 338 at 6, simply indicates that Defendant's violation of Plaintiff's Due Process rights was sufficiently plain as to warrant minimal discussion.[17]

---

[17] Indeed, absent Plaintiff's stipulation to the contrary, it is not clear that a reduction for lack of success would have been appropriate in this case. Plaintiff's First Amendment claim and Due Process claim were not "distinct in all respects" and Plaintiff won "substantial relief." *See Hensley*, 461 U.S. at 440 ("Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised.").

Finally, this Court will incorporate an additional 5% reduction to account for the *de minimis*, but perhaps inevitable, duplicative, excessive, or insufficiently detailed billing entries submitted by Plaintiff. This additional reduction also sufficiently accounts for fees sought for work dedicated solely to litigating Plaintiff's claims against the settling defendants.

Accordingly, Plaintiff's lodestar figure for fees incurred in the proceedings before this Court will be reduced by 30%.[18]

In light of the forgoing analysis, the Court awards Plaintiff a total of **$1,148,210.89** in reasonable attorneys' fees, calculated as follows:

---

[18] This Court recognizes that Defendant's specific objections based on duplicative, insufficiently detailed, and excessive time entries also encompassed fees associated with the appeal. The entirety of the additional 5% deduction based on Defendant's specific objections will be applied to the lodestar figure for proceedings before this Court—rather than divided between the lodestar figure for proceedings before this Court and the lodestar figure for the appeal—for two reasons. First, this Court finds that a 50% reduction to the lodestar figure for the appeal is appropriate both because of Plaintiff's lack of success on appeal on its First Amendment claim (as the parties agree) and because it sufficiently accounts for duplicative, insufficiently detailed, and excessive time entries associated with the appeal. Second, this Court finds that an additional 5% reduction to the lodestar figure for proceedings before this Court is necessary to sufficiently account for duplicative, insufficiently detailed, and excessive time entries associated with those proceedings. It is important to note that applying the full 5% reduction to the lodestar figure for proceedings before this Court inures to Defendant's benefit in that it results in a larger reduction to Plaintiff's fee award.

| | District Court Lodestar | Appeal Lodestar | Total Lodestar |
|---|---|---|---|
| Plaintiffs Requested Total (before applying proposed reduction) | $ 1,462,534.89 | $ 295,718.99 | $ 1,758,253.88 |
| Deduction for non-FDC Defendants | incorporated into reduction for lack of success | $ - | |
| Deduction for press release work | $ 2,802.20 | $ 1,115.00 | |
| Deduction for administrative/clerical tasks | $ 3,041.73 | $ - | |
| Deduction for noncompensable paralegal work | $ 5,872.00 | $ - | |
| Deduction for amicus support | $ 9,348.73 | $ 15,951.78 | |
| Duplicative billing | incorporated into reduction for lack of success | $ - | |
| No showing of necessity | $ - | $ - | |
| Billing from another case | $ 206.25 | | |
| Block billing | $ - | $ - | |
| Insufficient detail | incorporated into reduction for lack of success | $ - | |
| Non-prevailing motions | $ - | $ - | |
| Non-prevailing issue or party | incorporated into reduction for lack of success | $ - | |
| Excessive time | incorporated into reduction for lack of success | $ - | |
| Lodestar figure after deductions applied | $ 1,441,263.98 | $ 278,652.21 | $1,719,916.19 |
| Reduction for lack of success (30% District Court, 50% Appeal) | $ (432,379.19) | $ (139,326.11) | $ (571,705.30) |
| TOTAL FEE AWARD | $ 1,008,884.79 | $ 139,326.11 | $1,148,210.89 |

### III

Plaintiff seeks $33,623.57 in litigation expenses. ECF No. 356 at 25. Plaintiff submitted a chart detailing the claimed expenses and attorney declarations attesting that these expenses are accurate and represent costs actually incurred by Plaintiff's attorneys. ECF No. 329-6; ECF No. 329-8.

Defendant objects to numerous categories of these expenses. Specifically, Defendant objects to expenses associated with: (1) attendance at depositions by more than one attorney; (2) service of summons to dismissed defendants; (3) witness costs; (4) insufficiently described copy and postage costs; (5) briefing/appendix on appeal;

and (6) attendance at oral argument at the Eleventh Circuit by attorneys other than the author of the briefs and the attorney who conducted the oral argument. *See* ECF 338 at 31–32; ECF No. 338-24. Defendant also asserts that Plaintiff may not recover for any expenses without first providing receipts. ECF No. 338 at 32.

"[W]ith the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation or as an aspect of settlement of the case may be taxed as costs under section 1988." *Dowdell*, 698 F.2d at 1192. "The standard of reasonableness is to be given a liberal interpretation. . . .[C]ivil rights attorneys [may not] be charged with being financial efficiency experts." *Id.* Reasonable expenses may include travel, meals, lodging, photocopying, computer legal research, postage, courier services, and expert witnesses. *Holloway v. City of Orlando*, No. 6:15-cv-129, 2017 WL 397471, at *2 (M.D. Fla. Jan. 30, 2017). Witness travel expenses are recoverable. *Id.* at *7. However, expenses associated with "unnecessary" attorney attendance at hearings or depositions are not recoverable. *ACLU of Ga.*, 168 F.3d at 438–39.

As a preliminary matter, Plaintiff has submitted sufficient documentation to sustain an award of costs. *See Ela v. Destafano*, No. 6:13-cv-491, 2015 WL 7839723, at *8 n.3 (M.D. Fla. Dec. 2, 2015) (finding attorney affidavit and document

accounting for each taxable cost sufficient), *rev'd in part on other grounds*, 869 F.3d 1198 (11th Cir. 2017).

Plaintiff has also withdrawn its request for costs of the Eleventh Circuit brief and appendix, as well as its request of travel expenses associated with multiple attorneys attending the oral argument. ECF No. 356 at 25.

This Court will deduct the expenses relating to the service of summons to dismissed defendants Larry Mayo, Norman Jenkins, and William Churchwell totaling $175.[19]

Defendant's remaining objections lack merit. Expenses associated with postage, photocopying, and witness travel are recoverable. *Holloway*, 2017 WL 397471, at *2, *7. Further, it was reasonable for two attorneys to travel together to conduct eight depositions spread across three days and two cities. Finally, Plaintiff's expense entries are described in sufficient detail. *See Hodges*, 2014 WL 6455436, at *14 (a request for expenses must "enable[] the court to determine what expenses were incurred by the party and the party's entitlement to an award of those expenses").

Accordingly, this Court will award Plaintiff **$33,448.57** in reasonable expenses.

---

[19] This Court has already ruled that Plaintiff is not entitled to recover these expenses. *See* Order on Costs, ECF No. 326 at 3.

**IV**

For these reasons, it is **ORDERED:**

1.     Plaintiff's Motion to Determine the Amount of Attorneys' Fees and Expenses, ECF No. 329, is **GRANTED in part**.

2.     Plaintiff Prison Legal News is entitled to **$1,148,210.89** in attorneys' fees and **$33,448.57** in expenses. In addition, this Court has previously determined Plaintiff is entitled to $**6,204.42** in costs. ECF No. 326. Accordingly, Plaintiff's total judgment amount is **$1,187,863.88**.

3.     The Clerk shall enter a fee and cost judgment stating, "Plaintiff is entitled to judgment against Defendant in the amount of **$1,148,210.89** in attorneys' fees, **$33,448.57** in expenses, and $6,204.42 in costs, for a total judgment amount of **$1,187,863.88**, for which sum let execution issue."

4.     The Clerk shall also close the file.

**SO ORDERED on October 22, 2019.**

                                          **s/Mark E. Walker**
                                          **Chief United States District Judge**